# IN THE SUPREME COURT OF TEXAS

════════════
No. 14-0694
════════════

TEXAS DEPARTMENT OF PUBLIC SAFETY, PETITIONER,

v.

MERARDO BONILLA, RESPONDENT

════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS
════════════════════════════════════════════════════════

**PER CURIAM**

Merardo Bonilla sustained injuries in an automobile accident that occurred when a Texas

Department of Public Safety (DPS) trooper ran a red light while allegedly pursuing a reckless driver.

Bonilla sued DPS, relying on the Texas Tort Claims Act's sovereign-immunity waiver.[1]  In a

combined motion for summary judgment and plea to the jurisdiction, DPS claimed it retained

immunity from suit based on (1) the trooper's official immunity and (2) the emergency-response

exception to the Tort Claims Act's immunity waiver.[2]  The trial court denied DPS's motion and plea.

On interlocutory appeal, the court of appeals affirmed, holding that (1) DPS failed to conclusively

establish the good-faith element of its official-immunity defense, (2) DPS's summary-judgment

evidence was incompetent to establish good faith because it failed to address whether the trooper

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 101.021.

[2] *See id.* § 101.055 (excluding certain governmental functions from immunity waiver); *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000) ("When official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability.").

considered alternative courses of action, and (3) Bonilla raised a fact issue regarding applicability of the emergency-response exception.[3] In two appellate issues, DPS contends the court of appeals' analysis was flawed in several respects.

We have jurisdiction to consider the matter due to a conflict between the court of appeals' opinion and our precedent establishing the good-faith standard applicable to DPS's official-immunity defense.[4] Because the court of appeals applied a materially different legal standard, we reverse the court of appeals' judgment and remand to that court for further proceedings consistent with this opinion.

Official immunity is an affirmative defense that protects a governmental employee from personal liability and, in doing so, preserves a governmental employer's sovereign immunity from suit for vicarious liability.[5] A governmental employee is entitled to official immunity for the good-faith performance of discretionary duties within the scope of the employee's authority.[6] The issue in this case is whether DPS's summary-judgment evidence conclusively established the "good faith" element of the defense.

---

[3] ___ S.W.3d ___, No. 08-13-00117-CV, 2014 WL 2451176,*1, *6-8 (Tex. App.—El Paso May 30, 2014).

[4] *See* TEX. GOV'T CODE §§ 22.001(a)(2), (e), .225(c); *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 319 (Tex. 2007); *Clark*, 38 S.W.3d at 580-81; *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994).

[5] *Clark*, 38 S.W.3d at 580 (citing *Chambers*, 883 S.W.2d at 653 and *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995)); *see also* TEX. CIV. PRAC. & REM. CODE § 101.021 (governmental unit liable if "the employee would be personally liable to the claimant according to Texas law" or "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law").

[6] *Wadewitz*, 951 S.W.2d at 466.

Good faith is a test of objective legal reasonableness.[7] As we have consistently held, a law-enforcement officer can obtain summary judgment in a pursuit or emergency-response case by proving that a reasonably prudent officer, under the same or similar circumstances, could have believed the need for the officer's actions outweighed a clear risk of harm to the public from those actions.[8] "'Need' refers to the urgency of the circumstances requiring police intervention, while 'risk' refers to the countervailing public safety concerns."[9]

Good faith does not require proof that all reasonably prudent officers would have resolved the need/risk analysis in the same manner under similar circumstances.[10] Correspondingly, evidence of good faith is not controverted merely because a reasonably prudent officer could have made a different decision.[11] Rather, when the summary-judgment record bears competent evidence of good faith, that element of the official-immunity defense is established unless the plaintiff shows that *no* reasonable person in the officer's position could have thought the facts justified the officer's actions.[12]

---

[7] *Clark*, 38 S.W.3d at 580-81; *Ytuarte*, 229 S.W.3d at 320.

[8] *See, e.g.*, *Ytuarte*, 229 S.W.3d at 321; *Clark*, 38 S.W.3d at 581; *Wadewitz*, 951 S.W.2d at 466 & 467; *Chambers*, 883 S.W.2d at 656; *see also Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002) (in arrest cases, good faith exists if "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred").

[9] *Ytuarte*, 229 S.W.3d at 320.

[10] *See Chambers*, 883 S.W.2d at 657.

[11] *Id.*

[12] *Id.*

The court of appeals held that DPS failed to conclusively establish the good-faith element of its derivative immunity defense because "[u]nder the facts adduced by Bonilla, . . . a reasonably prudent police officer could determine that the need to stop the speeding truck in order to prevent an accident was outweighed by a more immediate risk of causing an accident himself" under the particular circumstances in this case.[13] The court afforded decisive weight to evidence that a reasonably prudent officer could have made a different decision. But that is not the correct evaluative standard. "The relevant test . . . is not whether the officers assessed the needs and risks differently, but whether no reasonable prudent officer could have assessed the need and risks as the [law-enforcement officer] did in this case."[14]

Viewed properly, the good-faith standard is analogous to an abuse-of-discretion standard that protects "'all but the plainly incompetent or those who knowingly violate the law.'"[15] It is "not equivalent to a general negligence test, which addresses what a reasonable person *would have done*"; thus, "[e]vidence of negligence alone will not controvert competent evidence of good faith."[16] Similarly, evidence that a reasonable law-enforcement officer could have resolved the need/risk analysis differently does not overcome competent evidence of good faith. The appropriate focus is what a reasonable officer *could have believed*,[17] and the determinative inquiry is whether any

[13] 2014 WL 2451176, at *7.

[14] *Ytuarte*, 229 S.W.3d at 321.

[15] *Id.* (quoting *Chambers*, 883 S.W.2d at 656 & 657 n.7).

[16] *Wadewitz*, 951 S.W.2d at 467 n.1.

[17] *Id.*

4

reasonably prudent officer possessed of the same information could have determined the trooper's actions were justified.[18]

Although the court of appeals framed the good-faith test inaccurately in this case, remand for reconsideration would be fruitless if the court were correct that DPS's summary-judgment evidence is fatally deficient. The court of appeals determined, in an alternative holding, that DPS's summary-judgment evidence was not competent to establish good faith because it failed to address whether the trooper considered alternative courses of action as an essential part of the need/risk balancing inquiry.[19]

Evidence of an officer's good faith must be substantiated with facts showing the officer assessed both the need to apprehend the suspect and the risk of harm to the public.[20] Summary-judgment proof does not provide a "suitable basis" for determining good faith if it fails to address several factors we have identified as bearing on the need/risk analysis, including the availability of any alternative action.[21] Good faith is not necessarily negated if the summary-judgment evidence

---

[18] *Chambers*, 883 S.W.2d at 657.

[19] 2014 WL 2451176, at *8.

[20] *Clark*, 38 S.W.3d at 581.

[21] *See Wadewitz*, 951 S.W.2d at 467 (elaborating on the good-faith test's need and risk elements and identifying several factors implicated by those inquiries); *see also Clark*, 38 S.W.3d at 581, 583, 587-88 (explaining that a law-enforcement officer's summary-judgment proof does not offer a suitable basis for determining good faith unless it sufficiently addresses all the *Wadewitz* need/risk factors).

reveals that the officer had a viable alternative, but the evidence must nevertheless show the officer assessed the availability of any alternative course of action.[22]

To establish good faith in this case, DPS relied almost exclusively on the trooper's account of the incident, as reflected in his affidavit, deposition testimony, and incident report.[23] The trooper testified that he observed a vehicle speed past him, weaving in and out of traffic. Although the trooper had decided to stop the vehicle, he explained that he did not immediately do so because there was no improved shoulder and he believed the location was unsafe to make a traffic stop. Very shortly thereafter, however, the vehicle failed to yield at a red light. The trooper testified that he believed the driver posed a risk of harm to the public but, at that point, he did not have sufficient time to call in the license-plate number to identify the driver of the vehicle. The trooper therefore decided to pursue the vehicle through the intersection and, according to him, did so only after slowing at the intersection and activating his emergency overhead lights. He stated that he did not have time to activate his emergency siren before he collided with Bonilla.

The court of appeals held that DPS's summary-judgment evidence was not competent to prove good faith because it did not "establish[] that [the trooper] considered whether any alternative

---

[22] *Clark*, 38 S.W.3d at 588 ("The availability of alternatives to pursuit is just one factor of the need/risk balancing test and the existence of alternatives to pursuit does not alone determine good faith."); *cf. id.* at 583 ("We recognize that, depending on the [exigent] circumstances, an officer may not be able to thoroughly analyze each need or risk factor, and that this alone should not prevent the officer from establishing good faith.").

[23] Bonilla disputes the trooper's version of events in several material respects, but Bonilla's controverting evidence is not germane to the competence of DPS's evidence in the first instance.

course of action was available to stop the speeding truck."[24]  We disagree with the court's characterization of the evidence.

Magic words are not required to establish that a law-enforcement officer considered the need/risk balancing factors.[25]  Summary judgment on official immunity requires that a movant establish facts upon which the court could base its legal conclusion, but no particular words are required.[26]  In *University of Houston v. Clark*, we concluded that an officer's affidavit testimony adequately addressed alternatives to pursuit by stating:

> "[T]he suspect [in a physical altercation on university property] had not been identified before he fled the foot patrol officers[, and] [t]he manner in which the suspect operated his vehicle and the high rate of speed at which he traveled . . . posed a danger to the public."[27]

Another officer's affidavit was likewise sufficient to address alternatives by averring:

> "[I] followed the suspect at a distance and was not able to get close enough to the suspect vehicle to obtain its license plate number.  I had expected the suspect vehicle to stop when the driver observed my overhead lights and siren behind him," but he did not.[28]

Though not elaborately discussed in DPS's summary-judgment proof, we conclude DPS's evidence is not significantly different from the evidence in *Clark* that we found adequate to address

---

[24] 2014 WL 2451176, at *8.

[25] *Wadewitz*, 951 S.W.2d at 467 (delineating factors that must be assessed in determining good faith in an emergency-response action); *see also Clark*, 38 S.W.3d at 586 (consideration of *Wadewitz* factors required to evaluate good faith in pursuit case).

[26] *Clark*, 38 S.W.3d at 586.

[27] *Id.* at 585.

[28] *Id.* at 586.

the alternative-options element of the need/risk analysis. DPS's summary-judgment evidence detailed the specific circumstances giving rise to pursuit and emphasized the potential danger to the public due to the subject vehicle's erratic and unsafe activity. Although not explicitly addressing alternatives to pursuit, the trooper implicitly discounted the viability of other alternatives based on his stated belief that immediate action was necessary and his inability to identify the driver at that time. The fact that the trooper did not expressly identify "alternatives" that may have been considered does not render the evidence deficient. The court of appeals erred in holding otherwise.

Having determined that the court of appeals applied an inaccurate good-faith standard and erroneously concluded that DPS failed to adduce evidence addressing alternatives to pursuit, we reverse the court's judgment and, without hearing oral argument, remand the cause to that court for reconsideration. *See* TEX. R. APP. P. 59.1. DPS's second issue, which challenges denial of its plea to the jurisdiction based on the Tort Claims Act's emergency exception, presents no meritorious issue for our review.

**OPINION DELIVERED**: December 4, 2015