

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00448-CV

———————————————————

CITY OF FORT WORTH, Appellant

V.

HORACE BEASLEY, Appellee

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2021-002172-1

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellee Horace Beasley was injured while trying to avoid a car driven by Appellant City of Fort Worth's Police Officer Andre Towns. Beasley sued the City, and in response the City filed a plea to the jurisdiction asserting immunity. The trial court denied the motion, and the City brought this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014. In three issues, the City argues that the trial court erred by denying its plea because (1) it retained its sovereign immunity through Towns's official immunity, (2) the Texas Tort Claims Act's emergency exception applied, and (3) its evidence showed that there was no causal nexus between Towns's operation of his vehicle and Beasley's injuries. We agree that the City established the application of official immunity, and we therefore reverse the trial court's order.

### Background

At the time of the incident, Towns was in pursuit of a suspected truck thief who had fled another officer's traffic stop. Two video excerpts—one from Towns's in-car dash camera and another from a home security camera that was coincidentally positioned almost directly over the part of the fence hit by Towns—captured the crash and Towns's driving immediately preceding the crash. While driving through a neighborhood, Towns made a too-wide right turn onto a street and lost control of his vehicle. As a result, he veered onto a grassy vacant lot next to a residence. Towns tried to regain control of his car, but he was apparently unable to do so, resulting in his car's crossing the street toward a resident's fence. Beasley was standing near the fence

2

talking to someone who was standing directly next to the fence. Towns's vehicle hit the fence but did not hit any person; Beasley saw the car approaching and jumped out of the way.[1] Beasley subsequently sued the City alleging that he had been injured by the fence. He alleged that the City's immunity had been waived under Section 101.021 of the Texas Tort Claims Act because his injuries had been caused by Towns's negligent operation or use of a motor-driven vehicle. *See id.* § 101.021(1).

The City filed a plea to the jurisdiction asserting that the Texas Tort Claims Act's emergency exception applied because Towns was responding to an emergency and because his actions were not taken with conscious indifference or with reckless disregard for the safety of others. *Id.* § 101.055(2). The City further argued that Towns had official immunity—and the City thus had derivative immunity—because he was performing his discretionary duties at the time and was acting in good faith and within the scope of his authority. Finally, the City argued that Towns's acts did not cause Beasley's injuries. To its plea, the City attached Towns's affidavit, the police department's crash report, the department's report on the stolen vehicle, and a memo written by Fort Worth Police Sergeant Ricardo Castro. The City also attached documents labeled as placeholders for Exhibit B-2 and B-3, which are Towns's dash

---

[1]The City asserts that Towns "took evasive action to avoid" people standing by the fence and, "[a]t that moment," saw Beasley "running in the same direction as [Towns's] vehicle was heading." The City contends that, to avoid Beasley, Towns made an "evasive maneuver by turning the wheel and hitting his brakes." Towns's dash cam video shows that the "running" that Beasley did was to move out of the way of the vehicle that he saw driving toward him.

cam video and the home security video, respectively. Beasley filed a response that attached no evidence and argued that Towns had not acted in good faith and was not entitled to rely on the emergency exception. The City then filed a reply attaching Sergeant Castro's affidavit.

At the hearing on the plea, the City's attorney argued that Towns "was responding to an emergency and was not reckless in his operation of his vehicle" and that Beasley had not produced any evidence to dispute the City's evidence. Beasley's attorney asserted that the City's own videos raised a question of good faith, arguing that "it goes to a question of judgment of whether or not speeding through a neighborhood in broad daylight with no sidewalks, that it would be reasonable to suspect that there would be people walking around, which is exactly the position my client found himself in." Beasley's attorney further asserted that the video showed that Towns "went into one yard and then decided to not brake[ ] but instead accelerate into another yard where my client was standing." The trial court then viewed the videos and after doing so, stated, "I think the videos speak for themselves." The trial court then denied the plea.

**Discussion**

The City's first issue asserts that the trial court erred by denying the plea to the jurisdiction because Beasley did not controvert the City's official-immunity evidence. We agree with the City and thus do not address the City's other issues. *See* Tex. R. App. P. 47.1.

4

## I. Official immunity

Under Texas Tort Claims Act Section 101.021, a government unit's immunity is waived for personal injuries caused by an employee's negligence while acting in the scope of his or her employment if the injuries arise from the operation or use of a motor-driven vehicle and the employee would be personally liable to the claimant under Texas law. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). The City's assertion of Towns's official immunity is a challenge to the "employee would be personally liable" element of that section because official immunity protects a governmental employee from personal liability. *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 n.5 (Tex. 2015); *see also DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995). Thus, if the employee would not be personally liable to a plaintiff because of official immunity, the government's immunity from suit is not waived under Section 101.021(1).[2] *See Bonilla*, 481 S.W.3d at 642; *see also DeWitt*, 904 S.W.2d at 653.

"A governmental employee has official immunity for the performance of discretionary duties within the scope of the employee's authority, provided the

---

[2]Generally, unlike immunity from suit, immunity from liability cannot be raised by a plea to the jurisdiction. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). However, under the Texas Tort Claims Act, immunity from suit and immunity from liability are coextensive, Tex. Civ. Prac. & Rem. Code Ann. § 101.025, and "when the facts underlying the merits and subject-matter jurisdiction are intertwined, the State may assert sovereign immunity from suit by a plea to the jurisdiction, even when the trial court must consider evidence necessary to resolve the jurisdictional issues raised." *Lueck*, 290 S.W.3d at 880 (citation and internal quotation marks omitted).

employee acts in good faith." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). Only the "good faith" element is disputed in this case.

"Good faith is a test of objective legal reasonableness," and in an emergency response or pursuit case like this one, good faith can be established with proof "that a reasonably prudent officer, under the same or similar circumstances, could have believed the need for the officer's actions outweighed a clear risk of harm to the public from those actions." *Bonilla*, 481 S.W.3d at 643; *see also Univ. of Houst. v. Clark*, 38 S.W.3d 578, 583 (Tex. 2000) (applying need/risk factors in context of police pursuit). The "need" part of that standard "refers to the urgency of the circumstances requiring police intervention, while 'risk' refers to the countervailing public safety concerns." *Bonilla*, 481 S.W.3d at 643 (citation and internal quotation marks omitted).

In evaluating "need," we consider factors "such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result." *Wadewitz*, 951 S.W.2d at 467. The "risk" part of the analysis involves factors such as "the nature and severity of harm that the officer's actions could cause," including harm to bystanders and the possibility of an accident preventing the officer from reaching the emergency, "the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer." *Id.* Good faith is not established if the evidence does not address these factors, including whether the

6

officer considered the availability of any alternative course of action. *Bonilla*, 481 S.W.3d at 644.

"Good faith does not require proof that all reasonably prudent officers would have resolved the need/risk analysis in the same manner under similar circumstances." *Id.* at 643. If the record contains competent good-faith evidence, good faith is established "unless the plaintiff shows that no reasonable person in the officer's position could have thought the facts justified the officer's actions." *Id.*

## II. The City's evidence and arguments

In Towns's affidavit, he explained that immediately before the crash, he was responding to a call for backup in pursuing a stolen-vehicle suspect[3] who had fled an attempted traffic stop in the stolen vehicle. Towns was part of the team that had been investigating the vehicle's theft, and while out on patrol, he received a call from another officer for assistance in creating a perimeter around an address where the suspect was believed to be heading. That other officer found the suspect and attempted to stop him, but the suspect fled the stop. The other officer then called for assistance in pursuing the suspect. Towns spotted the suspect and began to follow him. Towns did not see any other motorists or any pedestrians. While attempting to

---

[3]The City's brief says that on the preceding day, the suspect had stolen the vehicle by forcibly removing its owner, but the City provides no cite to the record to support that assertion or to show that Towns knew that information.

turn onto the street where he crashed; he "tr[ied] to maintain a visual on the suspect"; made a wide right turn; and drove onto the lot, where his vehicle lost traction.

Towns stated that he believed that the need to respond to the call outweighed any risk of speeding in the residential neighborhood, with which he was familiar and in which there was not usually any pedestrian traffic, and that he did not believe there was any reasonable alternative to pursuit available to him:

> Due to my law enforcement experience and responding to emergency calls, I understand that calls for back-up or assistance involving a felon fleeing by vehicle need to be responded to immediately because citizens and fellow followers could be in imminent danger and the immediate presence of other police officers is necessary to prevent serious injury to others. When I increased my speed to no more than 40 miles per hour in a 30 mile per hour zone, I believed . . . that the need to get to the officer who [had] requested cover and to apprehend a known felon, outweighed the perceived minimal risk of an accident. I recognized that there [is] some risk when an officer makes a decision to increase his speed while proceeding in a residential zone, but, given the dry condition of the road at the time, and no other vehicles traveling on the roadway, and my experience of there being little to no pedestrian traffic in that area, I did not perceive that increasing my speed [through the neighborhood] would cause any danger to any other driver or bystander close to my location. The potential danger posed by increasing my speed was far less, considering the above factors, than the danger posed by the fleeing felon, given the danger he posed to other people around him as well as the individuals in the vehicle with him. The police officer calling for assistance and back-up required immediate assistance and was expecting us to provide police back up, and there was no other reasonable alternative but proceed to the location in the manner in which I proceeded.

> From my point of view at the time, and at all times while [en] route to the location of the suspect, I did not engage in conduct I believed would pose a likelihood of serious injury to anyone. . . . I made no decisions based on any information [that] I believed to be incorrect or incomplete, and I would not have done so.

8

In Castro's report, he stated that Towns took the wide turn while trying to keep his eyes on the suspect and that tire tracks from the grassy lot he first drove onto showed that Towns had braked when he had driven into the lot. Castro stated that he [had] "found no General Orders violations" and "believe[d] [that] due to [Towns's] attempting to keep an eye on [the] suspect and where he was going might [have] contribute[d] to him taking a wider turn than necessary." In his subsequent affidavit, Castro stated that he had reviewed the videos and had read the crash report in investigating the incident. He stated that, "[a]fter reviewing the appropriate materials, it was and remain[ed] [his] firm belief that Officer Towns . . . acted with[in] departmental policy at all times relevant to this incident." Castro further opined that Towns's acts were those that a reasonable officer in the same circumstances would have taken, given the need to apprehend the suspect:

> Officer Towns'[s] decision to pursue under the circumstances was appropriate given the danger to the public inherent in the reckless driving he [had] observed and the need to apprehend the felony suspect.
>
> In my review, I found nothing that would constitute an error in the manner in which Officer Towns performed his duties with regard to this pursuit.
>
> It is my belief that there [was] probable cause to detain and ultimately arrest the suspect for the outstanding felony warrants and the stolen vehicle. Based on my experience with fleeing felons, I believe that [the suspect] posed a threat to the public as well as to the officers involved. I believe that the conduct of [Towns] and the other officers in initiating the pursuit and their actions during the pursuit were in compliance with the law and the same actions a reasonable officer in the same or similar circumstances would make.

9

## III. Application of law to evidence

Towns's affidavit is evidence of his belief that his pursuit was necessary to apprehend the fleeing suspect. Towns stated that the suspect's flight caused a danger to the public and to other officers and that he believed that the immediate presence of other officers was required to prevent any harm resulting from that danger. The affidavit is also sufficient evidence to show that Towns had considered whether an alternative course of action existed and that he believed that he had no alternative to pursuit. Further, the affidavit is also evidence that he was familiar with the area and, based on that familiarity, did not believe that he would encounter pedestrians or much vehicular traffic. In other words, the affidavit is evidence that Towns did not believe that his speeding or pursuit would result in an accident. Castro's affidavit supported Towns's evaluation of the situation and the reasonableness of his actions. This evidence shows that Towns conducted a needs/risk analysis and that a reasonably prudent officer, under the same or similar circumstances, could have believed that the need for Towns's actions outweighed a clear risk of harm to the public from those actions. *See id.* It thus was sufficient to establish good cause.

Beasley produced no evidence in response, relying solely on the videos showing Towns's driving. The videos show that when Towns made the turn, he took the turn too wide and too fast to maintain control of his vehicle. Additionally, his own statements indicate that, rather than watching the road or keeping an eye out for pedestrians when he took the turn, Towns was watching the suspect, which may have

10

contributed to Towns's failure to stay on the road. The videos do not, however, show that no reasonable officer in Towns's position could have thought the facts justified his pursuit or the manner in which he conducted it. Under Texas Supreme Court precedent, official immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and quotation marks omitted).[4] Thus, even if the videos show that Towns's driving was negligent, they do not negate his good faith for official-immunity purposes. *See id.* Accordingly, he was entitled to official immunity and cannot be liable to Beasley, and the Texas Tort Claims Act thus does not waive the City's immunity from Beasley's suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). We therefore sustain the City's first issue, which is dispositive of this appeal.

## Conclusion

Having sustained the City's dispositive first issue, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Beasley's claims against the City.

---

[4]Beasley does not argue that Towns's speeding violated the law, but we nevertheless note that the operator of an emergency vehicle may exceed a maximum speed limit as long as the operator does not endanger life or property. *See* Tex. Transp. Code Ann. § 546.001. Thus, evidence that Towns knew he was speeding but believed he was doing so safely does not show that he knowingly violated the law.

11

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  May 19, 2022