**Affirmed and Memorandum Majority Opinion and Memorandum Concurring Opinion filed October 27, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00128-CV

---

## CITY OF HOUSTON, Appellant

## V.

## JIMMIE LEE JONES JUNIOR, Appellee

---

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1158605**

---

### MEMORANDUM MAJORITY OPINION

In this interlocutory appeal,[1] Appellant, City of Houston (the "City"), appeals the denial of its motion for summary judgment contending that governmental immunity shielded it from the lawsuit filed by Appellee, Jimmie Lee

---

[1] This court has jurisdiction to consider an interlocutory appeal from the denial of a summary judgment motion by a governmental unit seeking a dismissal based on governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 541 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Jones, Jr. ("Jones"). We affirm.

## BACKGROUND

Shortly after midnight in May 2019, Sergeant Kim was driving his marked patrol car in full uniform on Bissonnet Street. He allegedly observed a black sedan driving without headlights approximately 150 to 200 yards ahead of him on Bissonnet Street at the West Sam Houston tollway. Sergeant Kim decided to initiate a traffic stop and focused on catching up to the sedan. When he looked up, he saw that his traffic light was red. Sergeant Kim then saw Jones's car approaching; he hit his brakes and turned his patrol car to the right in an effort to avoid striking Jones, but he was unsuccessful.

Jones sued the City in September 2020, and alleged that Sergeant Kim was negligent in operating his patrol car "when he failed to use ordinary care by various acts and omissions." Appellant listed numerous acts and omissions and further alleged that each of them "constitute[d] negligence and proximately caused the [accident] and caused Plaintiff's injuries and damages," and that the City is responsible for "the negligence of their agent, servant and/or employee pursuant to [section 101.021 of] the Texas Tort Claims Act, vicarious liability and respondeat superior because [Sergeant] Kim would be personally liable to Plaintiff according to Texas Law." A month later, the City filed an answer asserting, among other things, governmental immunity from suit and liability and official immunity "to all of Plaintiff's claims."

In January 2021, the City filed a Traditional Motion for Final Summary Judgment on Immunity, arguing the trial court lacked jurisdiction over Jones's claims because the City's governmental immunity was not waived. In that regard, the City contended that Sergeant Kim was protected by official immunity, which preserved the City's governmental immunity. The City contended that it

2

established that Sergeant Kim, at the time of the accident, acted within the scope of his authority, performed a discretionary duty, and acted in good faith. As evidence in support of its motion, the City attached Sergeant Kim's and Lieutenant Chen's affidavits. Lieutenant Chen appears to have been Sergeant Kim's supervisor at the time.

In February 2021, Jones filed a response to the City's summary judgment motion, arguing that the evidence he attached to his response raised a fact issue as to whether Sergeant Kim was entitled to official immunity. Jones attached a completed copy of the Texas Peace Officer's Crash Report, the Houston Police Department Crash Questionnaire Sergeant Kim filled out shortly after the accident, and Sergeant Kim's body camera video. He claimed this evidence contradicts the affidavits provided by Sergeant Kim and Lieutenant Chen.

About two weeks later, the City filed a Reply in Support of its Traditional Motion for Final Summary Judgment on Immunity (1) asserting that Jones's evidence does not refute "the testimony of Sergeant Kim and Lieutenant Chen"; and (2) requesting that the trial court dismiss Jones's case for lack of jurisdiction.

On March 2, 2021, the trial court held a hearing on the City's motion for summary judgment. The next day, the trial court signed an order denying the City's motion for summary judgment. The City filed a timely notice of interlocutory appeal.

## ANALYSIS

### I. Issue Presented

The City presents the following issue on appeal: "Where the uncontroverted evidence established that Sergeant Kim was performing a discretionary function, within the scope of his authority, and in good faith, does the City of Houston retain

its governmental immunity from suit?"

## II.    Standard of Review

Subject matter jurisdiction is necessary to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *City of Houston v. Manning*, No. 14-20-00051-CV, 2021 WL 1257295, at *4 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.).  A plaintiff must allege facts affirmatively showing the trial court has subject matter jurisdiction.  *Tex. Air Control Bd.*, 852 S.W.2d at 446; *Manning*, 2021 WL 1257295, at *4.  A party may challenge the lack of subject matter jurisdiction by a plea to the jurisdiction or by other procedural vehicles, such as the motion for summary judgment filed in this case.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 21 (Tex. App.—Houston [14th Dist.] 2020, no pet.).   Because subject matter jurisdiction is a question of law, we review the trial court's ruling *de novo*.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Manning*, 2021 WL 1257295, at *4.

To obtain a traditional summary judgment based on a lack of subject matter jurisdiction, a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *See* Tex. R. Civ. P. 166a(c); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019).  A nonmovant may raise a genuine issue of material fact by producing "'more than a scintilla of evidence establishing the existence of the challenged element.'" *Swanson*, 590 S.W.3d at 551 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).  While the City asserted immunity by way of a traditional summary judgment motion, the applicable standards generally mirror those governing review of an order denying a plea to the jurisdiction.  *Manning*,

2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. A defendant's jurisdictional plea may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4.

The City challenged the existence of jurisdictional facts; therefore, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *See Miranda*, 133 S.W.3d at 227. "In both traditional summary judgment and plea to the jurisdiction contexts, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor." *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. If the relevant evidence is undisputed or does not raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4. If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28.

## III. Official Immunity

The City argues in its sole issue that the trial court erred in denying its summary judgment motion because the uncontroverted evidence established that Sergeant Kim is protected by official immunity which in turn shields the City from Jones's claims.

### A. Governing Law

The City, as a municipality and political subdivision of the State, cannot be vicariously liable for its employees' acts unless its governmental immunity has

been waived. *Manning*, 2021 WL 1257295, at *4; *Gomez v. City of Houston*, 587 S.W.3d 891, 896 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc); *City of Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The parties here agree that the City's immunity from suit and liability is governed by section 101.021 of the Texas Tort Claims Act, which provides in relevant part:

> A governmental unit in the state is liable for . . . property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to Texas law. . . .

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). There seems to be no dispute that Jones's claims arise from Sergeant Kim's use of a motor vehicle and that Sergeant Kim acted within the scope of his employment with the City when he was following the black sedan to initiate a traffic stop. Instead, the parties' disagreement centers around whether Sergeant Kim "would be personally liable to the claimant according to Texas law." The City contends that Sergeant Kim is protected by official immunity and therefore would not be personally liable to Jones.

Official immunity is an affirmative defense that protects a governmental employee from personal liability and thereby preserves a governmental employer's governmental immunity from suit for vicarious liability. *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 (Tex. 2015) (per curiam). A governmental employee is entitled to official immunity for his good faith performance of

discretionary duties within the scope of the employee's authority. *Id.* at 642-43; *Gomez*, 587 S.W.3d at 897. Because official immunity is an affirmative defense, the burden rests on the City to establish all elements of that defense. *Manning*, 2021 WL 1257295, at *5; *Gomez*, 587 S.W.3d at 897. We first address whether the City conclusively established that Sergeant Kim acted in good faith and thus retained his official immunity because this question is dispositive of the City's sole issue.

Good faith must be measured against a standard of objective reasonableness without regard to the employee's subjective state of mind. *City of San Antonio v. Riojas*, 640 S.W.3d 534, 538 (Tex. 2022); *Gomez*, 587 S.W.3d at 897. To be entitled to summary judgment, the City must carry its initial burden to prove conclusively that a reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information he had at the time. *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-57 (Tex. 1994). The City does not have to prove that it would have been unreasonable not to take these actions, or that all reasonably prudent officers would have taken the same actions. *See Riojas*, 640 S.W.3d at 541; *Telthorster*, 92 S.W.3d at 465; *Manning*, 2021 WL 1257295, at *5. Instead, the City must conclusively prove that a reasonably prudent police officer, under the same or similar circumstances, might have reached the same decision. *See Telthorster*, 92 S.W.3d at 465; *Gomez*, 587 S.W.3d at 897.

That Sergeant Kim "was negligent will not defeat good faith; this test of good faith does not inquire into 'what a reasonable person *would have done*,' but into 'what a reasonable officer *could have believed*.'" *See Telthorster*, 92 S.W.3d at 465 (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997)

7

(emphasis added) (citing *Chambers*, 883 S.W.2d at 661 n.5)). The good faith standard is analogous to an abuse of discretion standard protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Riojas*, 640 S.W.3d at 540 (quoting *Bonilla*, 481 S.W.3d at 643 (quoting *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007) (per curiam) (quoting *Chambers*, 883 S.W.2d at 656, 657 n.7))).

In high-speed chases or emergency responses, a police officer acts in good faith if a reasonably prudent officer under the same or similar circumstances could have believed that the need for the officer's actions outweighed a clear risk of harm to the public from his actions. *Telthorster*, 92 S.W.3d at 464-65. However, "a particularized need-risk assessment is not required to establish good faith" unless there is a high-speed pursuit, an emergency response, or a "risk to the general public" akin to a high-speed pursuit or an emergency response. *See Riojas*, 640 S.W.3d at 540; *see also Telthorster*, 92 S.W.3d at 459, 464. Here, the parties agree that this case does not involve a high-speed pursuit or an emergency response. Therefore, to prove good faith, the City was required to establish that a reasonably prudent officer, under the same or similar circumstances, could have believed Sergeant Kim's actions were justified based on the information he had at the time. *See Telthorster*, 92 S.W.3d at 465.

Only when it has been determined that the City met its initial summary-judgment burden to conclusively prove Sergeant Kim's good faith do we address whether Jones's evidence raises a genuine issue of material fact on the issue of good faith. *See Manning*, 2021 WL 1257295, at *6; *Gomez*, 587 S.W.3d at 898. To raise a fact issue, Jones as the nonmovant must do more than show that a reasonably prudent police officer could have reached a different decision. *See Riojas*, 640 S.W.3d at 542; *Bonilla*, 481 S.W.3d at 643. Rather, Jones must offer

8

evidence that no reasonable police officer in Sergeant Kim's position could have believed that the facts were such that they justified his actions. *Gomez*, 587 S.W.3d at 897; *see also Riojas*, 640 S.W.3d at 542; *Bonilla*, 481 S.W.3d at 643.

## B.   Good Faith

We thus turn first to the question of whether the City met its initial burden to conclusively prove Sergeant Kim acted in good faith. In that regard, the City states in its brief:

> To establish good faith in non-emergency circumstances like this case, the party asserting official immunity must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. Here, both Sergeant Kim and Lieutenant Chen testified that a reasonably prudent officer under the same or similar circumstances could have believed that Sergeant Kim's actions were justified, based upon what they knew at the time.

(citation omitted). In his affidavit, Sergeant Kim described the events that transpired before the accident as follows:

3.    Shortly after midnight on May 24, 2019, I was in full uniform driving in a marked patrol vehicle. I was traveling west bound at 10200 Bissonnet. I observed a black sedan also traveling west bound driving without headlights under the overpass for the West Sam Houston tollway. The black sedan was approximately 150-200 yards ahead of me. He had already gone through the first light at the intersection of the tollway and Bissonnet, and was about to pass through the second. . . .

4.    I exercised my individual judgment to initiate a traffic stop of the black sedan driving without headlights. It was past midnight and dark outside. Because it was dark, I understood that operating a motor vehicle without headlights was a moving violation. . . . Based upon my experience, at that time of the morning, I have found many times that those individuals are intoxicated or otherwise impaired. I have seen accidents resulting from motorists driving without headlights; I recall

9

taking statements from drivers who were involved in those accidents, over half of whom were injured in the collision.

5. The weather was cloudy, but the roads were dry. Traffic was moderate to light. It was early Friday morning, so the traffic was lighter than it would have been on a Saturday at the same time.

6. Because the sedan was nearly two intersections ahead of me, I was focused on catching up to it. I looked up and observed that my light was yellow. I was about to turn on my lights and siren to initiate the traffic stop, and actually started moving my hand to activate my emergency equipment. However, the cruiser I was in was not my normal patrol vehicle; it was a much newer model with controls in a slightly different configuration, which slowed my ability to activate the emergency equipment. Then I looked up and saw that my light was actually red. I saw plaintiff's vehicle driving north bound on the West Sam Houston Tollway service road. I hit my brakes and turned my cruiser to the right to avoid striking the other vehicle, but could not. Less than 15 seconds passed between when I observed the black sedan and when the accident occurred.

7. It is my opinion that my actions in attempting to initiate the traffic stop of the vehicle driving without headlights were both reasonable and proper under the circumstances. I considered both the risk of harm to others from that motorist as well as the risk of harm to other drivers from my driving to catch up with him. I believe that a reasonably prudent law enforcement officer under the same or similar circumstances could have believed that my actions were justified based on my perception of the facts at the time and that the need to initiate the traffic stop outweighed any minimal risk of harm to others from my own driving.

Lieutenant Chen's affidavit is nearly identical; he also concluded that Sergeant Kim's "actions in attempting to initiate the traffic stop of the vehicle driving without headlights were both reasonable and proper under the circumstances."

We have previously held that an opinion that a police officer acted in good faith does not conclusively establish good faith when the opinion is reached "by

10

assuming the truth of disputed facts . . . and by failing to consider other uncontroverted facts." *City of Brazoria v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at \*5 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.) (quoting *Green v. Alford*, 274 S.W.3d 5, 20 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)); *see also Gomez*, 587 S.W.3d at 898 (same). The City's evidence of good faith apparently contains each of these flaws.

As to uncontroverted facts, there is no dispute that Sergeant Kim "focused on catching up to" the sedan, did not pay attention to the traffic light at the intersection he was approaching, and did not see the light turn red before he entered the intersection. It is also undisputed that he did not engage his brakes, stop, or slow down his patrol car when the traffic light turned yellow and then red, and he did not ensure that it was safe to proceed into the intersection. Sergeant Kim's body camera video showed that the light at the intersection was yellow and then red for about ten seconds before he drove into the intersection without either slowing down or engaging his brakes. Further, Sergeant Kim filled out the Houston Police Department Crash Questionnaire shortly after the accident, in which he wrote that he "drove through the intersection . . . then noticed my light was red and saw [Jones's] vehicle . . . [and then] hit the brakes."

When faced with a red traffic light, a motorist is required to stop and yield the right of way and may proceed through the intersection only when it is safe to do so. *See* Tex. Transp. Code Ann. § 545.151(a). Although police officers are sometimes allowed to violate traffic laws, they may do so only when it is safe. *See id*. § 546.001 (authorizing police officer to proceed through red signal after slowing as necessary for safe operation).

Sergeant Kim's and Lieutenant Chen's affidavits fail to address these circumstances. Neither of them opined that a reasonably prudent police officer

could have believed that Sergeant Kim's conduct was justified when considering the uncontroverted facts that Sergeant Kim (1) focused on the sedan allegedly driving ahead of him; (2) did not pay attention to or look at the traffic light while approaching and entering the upcoming intersection; (3) did not engage his brakes or slow down to safely enter the intersection once he observed the traffic light turn yellow or red; and (4) drove through the red light.

Additionally, to the extent Sergeant Kim and Lieutenant Chen meant to opine in their affidavits that Sergeant Kim's actions in not paying attention to the intersection's traffic light, not engaging his brakes or slowing down after allegedly seeing the yellow light, and driving through the red light "were both reasonable and proper under the circumstances" because Sergeant Kim tried to "turn on [his] lights and siren to initiate the traffic stop" once he "observed that [his] light was yellow," such a conclusion assumes the truth of a disputed fact, namely, that Sergeant Kim actually tried to activate his emergency equipment. Although Sergeant Kim testified in his affidavit that he "was about to turn on" his emergency equipment, the record contains contrary evidence.

Sergeant Kim's body camera video does not present any evidence that he moved his hand and tried to activate his lights and siren (his hands are largely out of view of the camera during the time in question). Further, Sergeant Kim did not claim that he tried to activate his emergency equipment before entering the intersection until his affidavit. The Houston Police Department Crash Questionnaire he filled out the night of the accident required him to "describe in detail how this crash occurred" and to "include actions by all drivers." Yet, Sergeant Kim did not state that he tried to turn on his emergency equipment before running the red light and driving through the intersection.

His body camera video, which was over one hour long, recorded the

12

accident as well as the entire accident investigation. Sergeant Kim can be seen and heard talking to numerous police officers and investigators at the scene about how the accident occurred, but he never mentioned he wanted to activate his emergency equipment or that he saw the traffic light turn yellow. Instead, he stated several times that: he was looking at the sedan driving in front of him; the traffic light was red as he was driving through the intersection; he looked up and saw the light was red; he hit his brakes; he then hit Jones's car. He also stated that his emergency lights were not turned on because he "thought [his] light was green and, when [he] looked up, it was red."

We conclude that the City did not conclusively demonstrate that Sergeant Kim acted in good faith because no witness testified that the standard for good faith was satisfied (1) if Sergeant Kim drove through the red light without trying to activate his emergency equipment after he allegedly observed a yellow light; and (2) when considering the uncontroverted facts that Sergeant Kim (a) focused on the sedan allegedly driving ahead of him, (b) did not pay attention to or look at the traffic light while approaching and entering the intersection, (c) did not engage his brakes or slow down to safely enter the intersection once he saw the traffic light turn yellow or red, and (d) drove through the red light. *See Gomez*, 587 S.W.3d at 897-99 (concluding that defendant did not conclusively establish that police officer acted in good faith when defendant's expert's good-faith opinion assumed the truth of a disputed fact); *Ellis*, 2015 WL 3424732, at *5-7 (concluding that defendant did not conclusively establish that police officer acted in good faith when defendant's witnesses assumed the truth of a disputed fact and failed to consider uncontroverted facts); *Green*, 274 S.W.3d at 20 (concluding that defendant did not conclusively establish that firefighter acted in good faith when defendant's expert's good-faith opinion assumed the truth of disputed facts and failed to consider other

13

uncontroverted facts).

Accordingly, we hold that the trial court did not err in denying the City's motion for summary judgment, and we overrule the City's issue.

## CONCLUSION

We affirm the trial court's order denying the City's motion for summary judgment.


/s/    Meagan Hassan
       Justice


Panel consists of Justices Jewell, Spain, and Hassan. (Jewell, J., concurring).

14