**Affirmed and Majority and Concurring Opinions filed April 4, 2023.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-20-00679-CV

## TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

## V.

## RATAN ZAKIR, Appellee

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-90845**

## C O N C U R R I N G   O P I N I O N

I do not join the majority opinion, but I agree with the result on this record.

I first address DPS's argument that the emergency exception to the Tort Claims Act's waiver of immunity applies. The TTCA waives governmental immunity from suit and liability in certain limited circumstances, including when, as here, a party alleges property damage or personal injury arising from the operation or use of a motor-driven vehicle. Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.025. Exempted from this waiver of immunity are claims included within the TTCA's

"emergency exception." *Id.* § 101.055(2); *Rattray v. City of Brownsville*, No. 20-0975, 2023 WL 2438952, at *3, —S.W.3d— (Tex. Mar. 10, 2023). Under that exception, the TTCA does not apply to a claim based on a governmental unit's employee's allegedly wrongful conduct if that employee, while responding to an emergency call or reacting to an emergency situation, acts in compliance with laws or ordinances applicable to the emergency actions or, absent such laws or ordinances, the employee's actions are not taken with conscious indifference or reckless disregard for the safety of others. Tex. Civ. Prac. & Rem. Code § 101.055(2). Thus, if a fact question exists that either (1) Sergeant Standifer's response violated a law applicable to an emergency response, or (2) absent applicable laws, Sergeant Standifer acted recklessly in pursuit, then the TTCA's waiver of immunity potentially will apply. *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022).

The majority addresses the second alternative and concludes a fact question exists regarding whether Sergeant Standifer acted recklessly in entering the intersection against the red signal. I would not reach the issue of recklessness because I conclude a fact question exists as to whether Sergeant Standifer complied with Transportation Code section 546.001(2), a law applicable to this emergency situation. In its plea, DPS relied on section 546.001(2), which provides that, in operating an authorized emergency vehicle, the operator may "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation." Tex. Transp. Code § 546.001(2); *see Maspero*, 640 S.W.3d at 530.

Our record does not conclusively show that Sergeant Standifer complied with this provision. The dash-cam video shows the traffic signal was red at all relevant times; that Sergeant Standifer, after accelerating toward the intersection, did not slow his vehicle before entering the intersection but began to slow only after entering

2

the first lane of cross-traffic; and that he came to a stop in the first two or three lanes of cross-traffic, where he was immediately struck on the driver's side of the vehicle. On this record, a fact question exists whether Sergeant Standifer slowed as necessary for safe operation of the vehicle before proceeding past a red signal. For this reason, DPS is not entitled to dismissal on the emergency exception argument.

The majority notes that the plaintiff did not raise this point in her response to the plea. This is irrelevant under the present circumstances. A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Rattray*, 2023 WL 2438952, at *4; *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). That burden consists of establishing a waiver of sovereign immunity in suits against the government. *Rattray*, 2023 WL 2438952, at *4. Giving appellee's original petition the appropriate liberal interpretation, I conclude that she discharged her burden to facially establish a waiver of immunity by invoking the immunity waiver in section 101.021(1), and by alleging facts that functionally negate the emergency exception. *See id.* at *4-5.

A governmental unit defendant may raise a jurisdictional challenge or deficiency, including one premised on sovereign immunity, by a number of procedural vehicles, including a motion for summary judgment or a plea to the jurisdiction. *Id.* at *5. DPS filed both a jurisdictional plea and a traditional motion for summary judgment. To obtain a traditional summary judgment based on lack of jurisdiction, a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Town of Shady Shores*, 590 S.W.3d at 551; Tex. R. Civ. P. 166a(c). All the evidence is reviewed in the light most favorable to the plaintiff to determine whether a genuine issue of material fact exists. *Town of Shady Shores*, 590 S.W.3d at 550. When, as here, a governmental unit challenges jurisdictional facts by a plea to the jurisdiction

with supporting evidence, the standard of review mirrors that of a traditional summary judgment. *Id.*; *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004).[1]

Several courts have considered a governmental unit's jurisdictional challenge based on section 101.055(2) when asserted in a plea to the jurisdiction or motion for summary judgment, supported with evidence. *Maspero*, 640 S.W.3d at 529; *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at *7 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op.); *City of San Antonio v. Smith*, 562 S.W.3d 75, 79 (Tex. App.—San Antonio 2018, pet. denied); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 700 (Tex. App.—Austin 2005, no pet.); *see also Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *City of Galveston v. Whitman*, 919 S.W.2d 929, 931 (Tex. App.—Houston [14th Dist.] 1996, writ denied). In the procedural posture in which section 101.055 was raised in those cases, the courts have explained that for the governmental unit to be entitled to dismissal as a matter of law, its evidence had to show that the employee responded to an emergency call or emergency situation and acted in compliance with the laws applicable to the emergency. *E.g.*, *Hussein*, 2020 WL 6788079, at *7; *Smith*, 562 S.W.3d at 79; *Hudson*, 179 S.W.3d at 700; *Quested*, 440 S.W.3d at 284. Once the governmental entity asserts and presents evidence to support the application of section 101.055(2), the plaintiff has the burden to plead and prove that the emergency exception does not apply. *Smith*, 562 S.W.3d at 79; *see Maspero*, 640 S.W.3d at 529; *Quested*, 440 S.W.3d at 284.[2]

---

[1] Nothing prevents a governmental entity from also relying on undisputed allegations in a plaintiff's petition, though that circumstance is not presented here.

[2] In *Maspero*, for example, the City of San Antonio asserted in its plea to the jurisdiction that the city's immunity was preserved under the emergency exception because the officer "was responding to an emergency in accordance with applicable law." *Maspero*, 640 S.W.3d at 527. The city raised the emergency exception in its plea and supported the contention with evidence.

4

For the "emergency exception" to apply, the record must establish that (1) the governmental employee was responding to an emergency and *either* (a) the employee was "in compliance with the laws and ordinances applicable to emergency action", or (b) in the absence of such a law or ordinance, the employee was not consciously indifferent or reckless. *See* Tex. Civ. Prac. & Rem. Code § 101.055(2); *Rattray*, 2023 WL 2438952, at *3. Importantly, the supreme court has construed the final clause of section 101.055(2) as imposing a recklessness standard "as a default *in case no other law or ordinance applies to the emergency action*." *City of Amarillo v. Martin*, 971 S.W.2d 426, 428 n.1 (Tex. 1998) (emphasis added).

Among the laws applicable to emergency situations are Transportation Code sections 546.001-.004. Section 546.001 identifies certain actions that emergency vehicle operators may take that otherwise would violate traffic laws. Tex. Transp. Code § 546.001. Section 546.002 explains the circumstances when actions listed in section 546.001 are permissible, and sections 546.003 and 546.004 impose additional requirements on the use of audio or visual signals when an operator engages in section 546.001 conduct. *Id.* §§ 546.002-.004.

Transportation Code section 546.005 is unlike sections 546.001-.004. Rather than specifying permissible emergency actions, section 546.005 states broadly that chapter 546 does not relieve an emergency vehicle operator from the duty to use "appropriate regard" for others' safety or from the consequences of the operator's recklessness. *Id.* § 546.005.

While section 546.005 applies in emergencies, it may not always be invoked by the parties, and one or more of sections 546.001-.004 may apply independently depending on the facts and issues raised. *See, e.g.*, *Maspero*, 640 S.W.3d at 529-30

---

*Id.* at 527-28. The plaintiff then bore the burden "of negating Section 101.055's applicability." *Id.* at 529.

(discussing plaintiff's arguments that the operator violated applicable laws in two respects independently of whether her conduct was reckless). Which, if any, "applicable laws" are at issue in any given case affects how section 101.055(2) operates. For example, the parties' dispute in some cases may be limited only to section 546.005—whether the operator was reckless. In those instances, the inquiries under the first and second clauses of section 101.055(2) are effectively identical and the "default" standard under the second clause applies because only recklessness is at issue. This is what happened in the cases cited by the majority— *City of Amarillo*, *City of Brazoria*, and *Gomez*. *See ante* at n.1; *Gomez v. City of Houston*, 587 S.W.3d 891, 905 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (Jewell, J., dissenting). The same was true in *Maspero*. *Maspero*, 640 S.W.3d at 529 ("Based on the structure and language of the pertinent statutory provisions governing emergency response, the distinction between these inquiries largely collapses in this case."). Reading section 101.055(2) and section 546.005 in this way makes sense because, insofar as an emergency vehicle operator's potential liability is concerned, considering whether the operator complied with section 546.005—an "applicable law"—involves only the question of recklessness, which is the same, fallback consideration under section 101.055(2). In this regard, section 546.005 does not call for any inquiry substantively different than what the final clause of section 101.055(2) already contemplates.

In contrast, when "applicable laws" other than the general notion of recklessness are at issue, then the first clause of section 101.055(2) applies. Courts must then examine compliance with those laws to determine whether the emergency exception applies. Such is the situation here. When a governmental entity movant asserts and presents evidence showing conclusively that its employee complied with an applicable law such as section 546.001(2), and assuming the non-movant presents

6

no evidence in response, then the exemption under section 101.055(2) applies and immunity is not waived. We do not then consider recklessness as well because the "conscious indifference and reckless disregard" provision applies only in the absence of other governing laws. *City of Amarillo*, 971 S.W.2d at 428 n.1; *City of Houston v. Frazier*, No. 01-21-00318-CV, 2022 WL 1216181, at *14 (Tex. App.—Houston [1st Dist.] Apr. 26, 2022, no pet.) (mem. op.); *Galveston Cnty. Health Dist. v. Hanley*, No. 01-14-00166-CV, 2014 WL 6853608, at *5 (Tex. App.—Houston [1st Dist.] Dec. 4, 2014, no pet.) (mem. op.); *Hudson*, 179 S.W.3d at 699. Doing otherwise disregards section 101.055(2)'s plain text and the supreme court's interpretation of that text in *City of Amarillo*. Conversely, if the evidence presented fails to conclusively establish compliance and a fact question exists—as I conclude occurred here—then the factfinder should decide whether the operator complied. If it answers yes, then immunity remains intact; if no, or if there is no compliance as a matter of law, then the emergency exception does not apply and immunity is waived.

If no other applicable laws are at issue, then we apply the "default" standard—whether the operator acted recklessly. If the operator is determined not to have acted recklessly, then the emergency exception applies, and the operator remains immune. If the operator is reckless, however, then immunity is waived and under section 546.005 the operator may answer in damages for that recklessness.

In its plea to the jurisdiction, DPS argued among other things that Sergeant Standifer was responding to an emergency and was authorized by statute to proceed into the intersection against a red light. It also argued that the Transportation Code authorized him to enter the intersection against the red light after slowing as needed for safe operation. DPS argued and presented evidence attempting to establish that Sergeant Standifer (1) reacted to an emergency situation and (2) acted in compliance

7

with the applicable law, namely section 546.001(2).[3] As I have stated, however, I believe the record fails to conclusively demonstrate compliance with Transportation Code section 546.001(2). That means the plea is properly denied, and the parties must await resolution by the factfinder on the compliance issue. But it does not mean that we should proceed to consider recklessness. Nor does it mean that we skip over the "compliance with the laws and ordinances" provision, as the majority opinion does. Because the "conscious indifference and reckless disregard" provision applies *only in the absence of governing laws* and because DPS has identified and invoked a law applicable to the situation presented by this appeal, it is error for the court to consider *at all* whether Sergeant Standifer acted with conscious indifference or reckless disregard. *See Hanley*, 2014 WL 6853608, at *5. Because DPS failed to establish conclusively that Sergeant Standifer complied with the applicable law raised in the plea, section 546.001(2),[4] the trial court did not err in denying the plea to the extent it was based on the emergency exception. *Id.* It is inappropriate to consider whether Sergeant Standifer also acted recklessly, and I do not agree with the majority's discussion of recklessness.

My colleagues in the majority read section 101.055(2) differently. They effectively conclude that recklessness is required to be considered, regardless of whether an operator has complied with other applicable laws. According to the majority, my interpretation of the statutes "would allow an emergency vehicle operator or, by extension, governmental employer to escape liability for

---

[3] In its plea, although DPS argued alternatively that Sergeant Standifer did not act recklessly, DPS did not cite, or argue that Sergeant Standifer's actions were consistent with, section 546.005(2). As I also observe, appellee's original petition did not even allege that Sergeant Standifer acted recklessly.

[4] Appellee's original petition implicated section 546.001(2) as well because it alleged that Sergeant Standifer failed to "properly stop" before proceeding through a red signal.

recklessconduct so long as they complied with the specific requirements of Transportation Code sections 546.001 through 546.004." *See ante* at n.1.

I see several problems with my colleagues' assertions. In their view, an emergency vehicle operator's compliance with applicable emergency laws such as section 546.001 is irrelevant, and they believe inquiry into recklessness is *always* "required" when section 101.055(2) is invoked. This approach conflicts with section 101.055(2)'s plain text. If the determinative question were always one of recklessness, why would the legislature have expressly said that the TTCA does not apply to a claim arising from the action of an emergency vehicle operator while responding to an emergency situation if the action is in compliance with applicable laws and ordinances, and *then* declared recklessness as the standard for waiving immunity only "in the absence of such a law or ordinance"? Tex. Civ. Prac. & Rem. Code § 101.055(2). The legislature could have easily said that the waiver of immunity "does not apply to a claim arising from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is not taken with conscious indifference or reckless disregard for the safety of others." The legislature did not say that.

The supreme court has confirmed the meaning of what the legislature said in the final clause of section 101.055(2): it imposes a recklessness standard "in case no other law or ordinance applies to the emergency action." *City of Amarillo*, 971 S.W.2d at 428 n.1. My colleagues incorrectly read the statute the other way around by applying a recklessness standard *regardless* whether another law or ordinance applies to the emergency action. The majority's statements cannot be squared with the statutory text, or with *City of Amarillo* and the other cases I have cited. For section 101.055(2) purposes, we address recklessness as a "default" in the absence of other governing laws, not in spite of other governing laws.

9

I turn next to DPS's alternative argument based on Sergeant Standifer's official immunity, which the court also rejects. According to the majority, DPS's evidence does not conclusively show that Sergeant Standifer acted in good faith. I agree that a conclusive showing of good faith does not exist on this record, but not for the reasons articulated by the majority.

To establish good faith in a police pursuit case, an officer must conclusively prove that a reasonably prudent officer in the same or similar circumstances could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit, taking into account all the *Wadewitz* factors.[5] *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 583 (Tex. 2000); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). This need/risk assessment "does not place an onerous burden on law enforcement." *City of San Antonio v. Riojas*, 640 S.W.3d 534, 539 (Tex. 2022). Once the officer presents evidence that a reasonably prudent officer, under the same or similar circumstances, could have believed the need for the officer's actions outweighed a clear risk of harm to the public from those actions, then the good faith element is established unless the plaintiff shows that no reasonable person in the officer's position could have thought the facts justified the officer's actions. *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015). Importantly, as the supreme court explained long ago, an officer's entitlement to immunity may not be defeated by a mere showing that another qualified official could have reasonably assessed the needs and risks differently. *See id.* Most assuredly, it is not within the court's province to reject an officer's good faith assessment simply because the *court* would have concluded differently.

---

[5] *Wadewitz v. Montgomery*, 951 S.W.2d 464 (Tex. 1997).

Several statements in the majority opinion suggest that my colleagues simply disagree with how Sergeant Standifer assessed the needs versus the risks of pursuit. This is akin to concluding that good faith is not established because a reasonably prudent officer could have assessed the risks differently, which is impermissible. The Supreme Court of Texas has expressly rejected that type of reasoning as "not the correct evaluative standard." *Id.*

The determinative question is whether the evidence presents a suitable factual basis for concluding that a reasonable official could have believed that the conduct was appropriate considering *Wadewitz* factors. *See Riojas*, 640 S.W.3d at 539 (citing *Wadewitz*, 951 S.W.2d at 467); *Univ. of Houston*, 38 S.W.3d at 588. This is where DPS's proof fails, in my view. The evidence offered in support of DPS's motion relies on an assumption or assertion that is not supported by the record, namely that Sergeant Standifer slowed before entering the intersection. The dash-cam video does not bear this out, at least not conclusively. When evidence offered to support good faith relies on assumptions not supported in the record, the officer has not conclusively proven good faith. *E.g.*, *Collins v. City of Houston*, No. 14-13-00533-CV, 2014 WL 3051231, at *6 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.) (holding opinions failed to establish good faith because they "relie[d] on assumptions that are not supported by the record"). For this reason, the record as it stands does not conclusively establish the defense of official immunity.

According to the majority opinion, DPS's evidence also fails to conclusively establish good faith because the officers' affidavits did not address alternative actions that Sergeant Standifer could have taken. I respectfully disagree. The movant's evidence must show that the trooper assessed the availability of any alternative course of action. *Bonilla*, 481 S.W.3d at 644. This showing, however, does not require magic words and may be implicit within the evidence. *See id.* at

11

645. Here, the evidence supports Sergeant Standifer's position that pursuit was necessitated, and the video shows that the officer was at such a distance from the driver who ran the red light—at least four cars back—such that the license plate number is not discernable. Thus, the record shows that the offending driver could not have been identified at the time he proceeded through the red light. This circumstance compares favorably with cases in which the supreme court has held the evidence adequately addressed the alternative-options element of the need/risk analysis. *See Univ. of Houston*, 38 S.W.3d at 585-86.[6] In his affidavit, Sergeant Standifer did not say that he did not see the license plate number, but it is otherwise quite apparent from the record evidence. "The fact that the trooper did not expressly identify 'alternatives' that may have been considered does not render the evidence deficient." *Id.*

For these reasons, I concur in the judgment.

/s/ Kevin Jewell
Justice

Panel consists of Justices Jewell, Bourliot, and Poissant (Bourliot, J., majority).

---

[6] "On whether his presence was immediately necessary to apprehend the suspect and on the availability of alternatives to pursuit, Williams stated that he knew that the suspect had not been identified." *Id.* at 585. "On alternatives to pursuit, Stewart stated that he 'followed the suspect at a distance and was not able to get close enough to the suspect vehicle to obtain its license plate number. I had expected the suspect vehicle to stop when the driver observed my overhead lights and siren behind him,' but he did not." *Id.* at 586.

12