**Reversed and Rendered and Memorandum Opinion filed August 29, 2024.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-23-00570-CV

_____

**CITY OF HOUSTON, Appellant**

**V.**

**RACHEL MORRIS AND MIA SANDERS, Appellees**

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-50930**

## MEMORANDUM OPINION

In this interlocutory appeal,[1] the City of Houston appeals the denial of its motion for summary judgment contending that governmental immunity shielded it from the lawsuit filed by Appellees Rachel Morris and Mia Sanders. We reverse the

---

[1] This court has jurisdiction to consider an interlocutory appeal from the denial of a motion for summary judgment by a governmental unit seeking a dismissal based on governmental immunity. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 549 (Tex. 2019); *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); *Oakbend Med. Ctr. v. Martinez*, 515 S.W.3d 536, 541 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

trial court's order and render judgment dismissing the case for want of subject matter jurisdiction.

## BACKGROUND

At approximately 9:00 p.m. on August 14, 2021, Houston Police Officers Kpotie and Young were working with the Houston Police Department crime suppression team on a prostitution operation targeting an area in southwest Houston. As part of the operation, an undercover officer was supposed "to engage the services of a prostitution suspect and take them to a pre-arranged location in an unmarked vehicle." Officers Kpotie and Young sat in one of the marked police vehicles involved in the operation. Both officers wore their police uniform and waited for a surveilling unit to notify the marked units that there was "a good case."

When Officers Kpotie and Young received the notification, Officer Kpotie drove toward a pre-arranged location at which marked units were supposed to arrest the suspect. As Officer Koptie was following the undercover unit, he was driving his marked unit above the speed limit but did not activate the lights or siren. At a traffic light, he made a left turn onto Bissonnet Street. As he continued westbound following "the direction of travel being called out by the surveilling officer," Officer Young saw "a shadow suddenly appear in front of the passenger side of our vehicle." She told Officer Kpotie "to watch out." Officer Kpotie did not see a pedestrian, who was later identified as sixty-nine-year-old Steve Sanders, until Officer Young alerted him that Sanders was running across Bissonnet Street. Sanders was dressed in black and ran across the street outside of a crosswalk. Officer Kpotie steered the police car to the left when he saw Sanders, but his attempt to avoid hitting Sanders failed. He hit Sanders with the right front of the car and Sanders landed on the pavement. Sanders died as a result of the collision.

Appellees, Sanders's daughters, sued the City in August 2022, alleging that

2

(1) Sanders's death was "brought about and caused to occur due to the negligence and carelessness of the" City; (2) the City, "acting by and through the driver of its police vehicle, believed to be Officer Kpotie, committed various acts and omissions, each of which constitutes negligence, at common law or as a matter of law, which was a proximate cause of the occurrence, damages and injuries complained of herein"; (3) their claims against the City fall "under the Texas Tort Claims Act ('TTCA')"; and (4) the trial court has jurisdiction over Appellees' "claims because through the TTCA, Defendant's governmental immunity has been waived for claims involving personal injury resulting from a motor vehicle collision." In September 2022, the City filed an answer and special exceptions. The City asserted, among other things, governmental immunity from suit and liability and official immunity as an affirmative defense to all of Appellees' claims.

On June 16, 2023, the City filed a traditional and no-evidence motion for final summary judgment on immunity arguing the trial court lacked jurisdiction over Appellees' claims because the City's immunity was not waived. In that regard, the City argued that (1) Officer Kpotie did not breach a duty that proximately caused the accident; (2) Sanders was the proximate cause of the accident; (3) "Officer Kpotie would not be personally liable under the common law based upon the sudden emergency inferential rebuttal;" (4) it was "shielded by the official immunity of its employee" Officer Kpotie; and (5) "[t]he TTCA's Emergency Exception preserves Houston's immunity." As evidence in support of its motion, the City attached affidavits from Officers Kpotie and Young.

Appellees filed their summary judgment response on July 3, 2023. In the portion titled Response to No-Evidence Motion for Summary Judgment, Appellees argued regarding breach of duty and proximate cause that "they have met their burden to establish more than a scintilla of evidence that Officer Kpotie's operation

3

of his police cruiser 20 m.p.h. above the posted speed limit in low light conditions constitute a breach of the duties imposed on every Texas driver in the prudent operation of a motor vehicle on Texas roadways and that this breach of duties was a proximate cause of Mr. Sanders' death." Regarding sole proximate cause, Appellees argued they "have presented more than a scintilla of evidence that Officer Kpotie's acts and omissions of driving 20 m.p.h. above the posted speed were a proximate cause of the incident." With respect to sudden emergency, Appellees argued that Officer Kpotie's "negligent operation of his vehicle negates the applicability of the 'sudden emergency' defense."

In the portion titled Response to Traditional Motion for Summary Judgment, Appellees contended that the City did not meet its burden of proving as a matter of law that the official immunity defense applies because it "failed to prove both that Kpotie acted in good faith and that Kpotie was engaged in a discretionary function at the time of the crash." Appellees also contended that the City failed to prove the TTCA's Emergency Exception preserves its immunity because "Officer Kpotie's excessive speed was unsafe and unwarranted as he was not responding to an emergency call." As summary judgment evidence, Appellees attached excerpts from the Houston Police Department's crash and incident reports relating to the accident.

A few days later, the City filed what purports to be a reply to Appellees' summary judgment response. Therein, the City objected to Appellees' summary judgment evidence asserting their two exhibits should be stricken because they are improperly authenticated and are "chock-full of hearsay and hearsay within hearsay." The City also argued that (1) Appellees' "own evidence establishes the accident was not caused by any breach of duty by [the City]'s driver, but by Steve Sanders' suddenly running into traffic outside of a crosswalk while intoxicated and failing to yield the right of way to a vehicle"; (2) it is shielded by Officer Kpotie's

4

official immunity because it proved Officer Kpotie acted in good faith and Appellees "did not refute discretionary function and scope of authority;" and (3) Appellees presented no evidence to overcome the TTCA's emergency exception.

On July 19, 2023, the trial court signed an order denying the City's "Motion for No-Evidence Summary Judgment and Motion for Traditional Summary Judgment." The City filed an objection to the trial court's failure to rule on the City's evidentiary objections, but the trial court did not make a ruling on the objection. The City filed a timely notice of interlocutory appeal.

## ANALYSIS

The City contends the trial court erroneously denied its motion for summary judgment because it is entitled to governmental immunity. In that respect, the City asserts that:

(1) its evidence establishes as a matter of law that it retains its governmental immunity because (a) Officer Kpotie breached no duty that proximately caused the death of Sanders, and (b) "Sanders' choice to run into traffic at night dressed in black was the proximate cause of his fatal injuries";

(2) it is shielded by Officer Kpotie's official immunity because the evidence establishes as a matter of law that, at the time of the accident, Officer Kpotie was (a) acting within the scope of his authority, (b) performing a discretionary duty, and (c) acting in good faith;

(3) the TTCA's emergency exception preserves its governmental immunity because the evidence establishes that Officer Kpotie was reacting to an emergency situation that Sanders created running into traffic; and

(4) Appellees did not present evidence to overcome Officer Kpotie's official immunity because (a) the evidence they proffered should have been

5

excluded because it was not properly authenticated and it constitutes hearsay, and (b) even if the proffered evidence could be considered, it actually supports the City's governmental immunity.

Because we conclude that the City as a matter of law established that Officer Kpotie would be entitled to official immunity and, thus, the City's governmental immunity was not waived, we need only reach the City's arguments relating to official immunity. Before turning to the standard of review and applicable law, we note that it is unclear from the City's summary judgment motion and briefing in this court what specifically the City challenged on traditional and what on no-evidence grounds. Appellees understood that the City in its motion for summary judgment asserted a right to judgment regarding breach of duty, proximate cause, sole proximate cause, and sudden emergency under the no-evidence standard and a right to judgment regarding official immunity and the TTCA's emergency exception under the traditional standard. Appellees filed their response accordingly. We read the City's summary judgment motion as asserting a right to judgment based on official immunity under the traditional summary judgment standard and, therefore, address the City's dispositive official immunity arguments under that standard.[2]

## I. Standard of Review

---

[2] To the extent the City moved for no-evidence summary judgment based on official immunity, the trial court would not have erred in denying a no-evidence motion because the City was not entitled to a no-evidence summary judgment on this ground as official immunity is an affirmative defense and the City was required to conclusively prove all of its elements. *See City of Springtown v. Ashenfelter*, No. 02-23-00204-CV, 2024 WL 1792380, at *7 (Tex. App.—Fort Worth Apr. 25, 2024, no pet. h.) (mem. op.); *see also* Tex. R. Civ. P. 166a(i) (providing for no-evidence summary judgment motion challenging element of claim or defense "on which an adverse party would have the burden of proof at trial"); *Grant v. Wind Turbine & Energy Cables Corp.*, No. 02-21-00036-CV, 2022 WL 2840142, at *2 n.9 (Tex. App.—Fort Worth July 21, 2022, no pet.) ("But [defendant] bore the burden on its affirmative defense, and a party may file a no-evidence motion to challenge only a claim or defense on which it does not bear the burden of proof.").

Subject matter jurisdiction is necessary to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *City of Houston v. Manning*, No. 14-20-00051-CV, 2021 WL 1257295, at *4 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.). A plaintiff must allege facts affirmatively showing the trial court has subject matter jurisdiction. *Tex. Air Control Bd.*, 852 S.W.2d at 446; *Manning*, 2021 WL 1257295, at *4. A party may challenge the lack of subject matter jurisdiction by a plea to the jurisdiction or by other procedural vehicles, such as a motion for summary judgment filed in this case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 21 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Because subject matter jurisdiction is a question of law, we review the trial court's ruling *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Manning*, 2021 WL 1257295, at *4.

To obtain a traditional summary judgment based on a lack of subject matter jurisdiction, a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019). A nonmovant may raise a genuine issue of material fact by producing "'more than a scintilla of evidence establishing the existence of the challenged element.'" *Swanson*, 590 S.W.3d at 551 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). While the City asserted immunity by way of a traditional summary judgment motion, the applicable standards generally mirror those governing review of an order denying a plea to the jurisdiction. *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. A defendant's jurisdictional plea may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4.

7

The City challenged the existence of jurisdictional facts; therefore, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *See Miranda*, 133 S.W.3d at 227. "In both traditional summary judgment and plea to the jurisdiction contexts, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor." *Manning*, 2021 WL 1257295, at *4; *see also Miranda*, 133 S.W.3d at 228. If the relevant evidence is undisputed or does not raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228; *Manning*, 2021 WL 1257295, at *4. If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28.

## II.  Official Immunity

The City argues that the trial court erred in denying its summary judgment motion because it is shielded by Officer Kpotie's official immunity and thereby retained its governmental immunity.

### A.  Applicable Law

A city performing governmental functions may not be sued for its employees' conduct unless a plaintiff demonstrates the Legislature waived the city's governmental immunity. *City of Houston v. Sauls*, 690 S.W.3d 60, 69 (Tex. 2024); *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023). To do so, Appellees rely on Section 101.021(1) of the TTCA, which provides in relevant part:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting

8

within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law[.]

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). This section makes a city liable for a death arising from the operation of a motor vehicle and proximately caused by an employee's negligence if the "employee would be personally liable" under Texas law. *Sauls*, 690 S.W.3d at 69; *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(1), .025. Therefore, if a legal doctrine protects the employee from personal liability, section 101.021(1) does not waive immunity. *Sauls*, 690 S.W.3d at 69.

Official immunity, a common law affirmative defense, is one such legal doctrine. *Id.*; *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 (Tex. 2015) (per curiam). "Official immunity shields government employees from liability in civil lawsuits that, with the benefit of hindsight, would second-guess their performance of discretionary duties and force them to defend decisions that were reasonable when made." *Sauls*, 690 S.W.3d at 69; *Telthorster v. Tennell*, 92 S.W.3d 457, 463 (Tex. 2002). The purpose of official immunity is "to insulate the functioning of government from the harassment of litigation, not to protect erring officials." *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994); *see Sauls*, 690 S.W.3d at 69. However, official immunity protects governmental employees only when they are performing discretionary duties in good faith and within the scope of their authority. *Bonilla*, 481 S.W.3d at 642-43; *Gomez v. City of Houston*, 587 S.W.3d 891, 896 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc). Because official immunity is an affirmative defense, the burden rests on the City to establish all elements of that defense. *Manning*, 2021 WL 1257295, at *5; *Gomez*, 587 S.W.3d at 897.

9

Arguing that Officer Kpotie's actions satisfied these three elements, the City moved for traditional summary judgment on the ground that it retained its governmental immunity. Appellees only disputed whether Officer Kpotie acted in good faith; they raised no arguments regarding discretionary duty or scope of authority. We therefore proceed to address whether the City conclusively established that Officer Kpotie acted in good faith.

## B.    Good Faith

Relying on the affidavits from Officers Kpotie and Young and citing applicable authorities, the City claims, as it did in the trial court, it proved that Officer Kpotie acted in good faith when the accident occurred. Appellees contend, and did so in the trial court, that the City did not meet its burden to show Officer Kpotie acted in good faith because the City (1) "failed to present any adequate evidence that Officer Kpotie considered alternative courses of action;" and (2) "failed to present any evidence showing that Officer Kpotie considered or weighed the risks of his conduct."

### 1.    *Good-Faith Test*

A test of good faith is a test of objective reasonableness without regard to the governmental employee's subjective state of mind. *Sauls*, 690 S.W.3d at 73; *City of San Antonio v. Riojas*, 640 S.W.3d 534, 538 (Tex. 2022). To be entitled to summary judgment, the City must carry its initial burden to prove conclusively that a reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information he had at the time. *Telthorster*, 92 S.W.3d at 465; *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-57 (Tex. 1994). The City does not have to prove that it would have been unreasonable not to take these actions, or that all reasonably prudent officers would have taken the same actions. *See Riojas*, 640 S.W.3d at 541; *Telthorster*, 92 S.W.3d

10

at 465; *Manning*, 2021 WL 1257295, at \*5.  Rather, the City must prove conclusively that a reasonably prudent officer, under the same or similar circumstances, might have reached the same decision.  *See Telthorster*, 92 S.W.3d at 465; *Gomez*, 587 S.W.3d at 897.

That a police officer "was negligent will not defeat good faith; this test of good faith does not inquire into 'what a reasonable person would have done,' but into 'what a reasonable officer could have believed.'"  *See Telthorster*, 92 S.W.3d at 465 (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997) (citing *Chambers*, 883 S.W.2d at 661 n.5)).  The "objective good faith test 'does not place an onerous burden on law enforcement.'"  *Sauls*, 690 S.W.3d at 75 (quoting *Riojas*, 640 S.W.3d at 539).  It is analogous to an abuse of discretion standard protecting "'all but the plainly incompetent or those who knowingly violate the law.'"  *Riojas*, 640 S.W.3d at 540 (quoting *Bonilla*, 481 S.W.3d at 643 (quoting *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007) (per curiam) (quoting *Chambers*, 883 S.W.2d at 656, 657 n.7))).

Although the supreme court developed particularized need-risk factors to substantiate conclusions about the existence of good faith in emergency response cases, such a need-risk balancing analysis does not apply outside of the context of a police emergency.  *Sauls*, 690 S.W.3d at 73-4; *Riojas*, 640 S.W.3d at 535, 542.  In fact, the supreme court "expressly refused to" require and apply the need-risk factors "'outside the context of a high-speed chase or other emergency law-enforcement response that carries an inherent risk of harm to the public.'"  *Sauls*, 690 S.W.3d at 73-4 (quoting *Riojas*, 640 S.W.3d at 535).  Thus, outside the context of a police emergency, to demonstrate his good faith, a police officer is only required to show that a reasonably prudent officer faced with the same circumstances could have believed that his conduct was justified.  *See Riojas*, 640 S.W.3d at 542; *Telthorster*,

92 S.W.3d at 465.

Only when it has been determined that the governmental unit met its initial burden to conclusively prove the police officer's good faith does the court address whether the nonmovant's evidence raises a genuine issue of material fact on the issue of good faith. *See Riojas*, 640 S.W.3d at 541; *Telthorster*, 92 S.W.3d at 465. To raise a fact issue, the nonmovant must do more than show that a reasonably prudent police officer could have reached a different decision. *See Riojas*, 640 S.W.3d at 542; *Bonilla*, 481 S.W.3d at 643. Instead, the nonmovant must offer evidence that no reasonable police officer in the officer's position could have believed that the facts were such that they justified the challenged actions. *See Riojas*, 640 S.W.3d at 542; *Bonilla*, 481 S.W.3d at 643.

### 2. Application

In determining whether the City conclusively established that Officer Kpotie acted in good faith, we next turn to the evidence in this case. Appellees claim that the City failed to establish good faith because it did not present evidence that Officer Kpotie "subjectively considered alternative courses of action" or weighed the risks of his conduct speeding "without lights or sirens at nighttime."

Contrary to Appellees' assertion, the good-faith test does not require that the officer subjectively assessed certain factors while performing his duties. *See Sauls*, 690 S.W.3d at 74 ("Although the good-faith inquiry 'must be filtered through the lens of the officer's perceptions at the time of the incident,' the test's focus is on the objective facts and information the officer knew and perceived, not whether the officer had subjectively considered and assessed certain factors. Ultimately, the officer's actions — not his or her subjective assessments — must be justified with reference to what a reasonably prudent officer, possessed of the same information and under the same or similar circumstances, could have believed.").

12

Further, the test is a holistic inquiry with no magic words required, so that "[a]lternative courses of action may be 'implicitly discounted' instead of 'explicitly address[ed]'" and risks "that are generally 'present to some degree' do not need to be 'explicitly mention[ed]' and can be addressed through describing the facts and circumstances that affected the risks." *Id*. (quoting *Bonilla*, 481 S.W.3d at 645, and *Univ. of Houston v. Clark*, 38 S.W.3d 578, 586 (Tex. 2000)). More importantly, there is no emergency situation in this case (as Appellees acknowledged) and a need-risk balancing analysis does not apply outside of the context of a police emergency. *Sauls*, 690 S.W.3d at 73-74; *Riojas*, 640 S.W.3d at 535, 542.

Here, the City presented affidavits from Officer Kpotie and his partner Officer Young. In relevant part, Officer Young stated in her affidavit as follows:

> We headed out of the parking lot and . . . did not activate lights and siren at this point because we were not directly behind the undercover vehicle, and there were other prostitution suspects and other undercover officers on the ground in that location; we did not want to tip off other suspects or blow the cover of the undercover units who were still participating in the operation.

> The undercover officer was several vehicles ahead of us and made a left turn at the intersection of Centre Parkway and Bissonnet Street traveling westbound. We could not make the light so Officer Kpotie exercised his individual discretion to wait at the red light while continuing to listen to the surveillance officer provide updates on direction of travel. As part of this operation, Officer Kpotie had the discretion to proceed into this intersection against the light if he had activated my emergency equipment. But he decided not to because it is a very busy intersection, and it would have been too risky. Every time we activate emergency equipment, there is a risk of an accident. And the traffic was unusually busy that evening. Once the light turned green, we made the left turn and went westbound on Bissonnet Street. We passed through the green light at Woodfair Drive and continued westbound on Bissonnet Street. I observed Officer Kpotie trying to drive as safely as possible, by looking around, observing traffic conditions and other motorists, and by using his blinkers. The roads

13

were dry, and the weather was clear. I do not know how fast he was traveling but we were stuck in the middle of a bunch of cars that were going roughly the same speed, which prohibited us from catching up with the suspect vehicle. Based upon these facts, I believed Officer Kpotie's speed to be generally safe and appropriate for the situation and the safety of other motorist[s] and others in the area.

In the 10,000 block of Bissonnet Street, I recall seeing a shadow suddenly appear in front of the passenger side of our vehicle. I remembered telling Kpotie to watch out but I don't know whether I completed the thought before the impact because it happened so fast.

*       *       *

It is my opinion that Officer Kpotie's actions in traveling towards the undercover vehicle without activating emergency equipment in support of this operation were both reasonable and proper under the circumstances. He considered both the need to assist the operation as a marked unit who could not only make the arrest and protect the safety of the undercover unit, as well as risk of harm to other drivers from his driving as part of this operation. I believe that a reasonably prudent law enforcement officer under the same or similar circumstances could have believed that Officer Kpotie's actions were justified based on his perception of the facts at the time and that the need to immediately reach the undercover vehicle to make the prostitution arrest outweighed any minimal risk of harm to others from his own driving.

In his affidavit, Officer Kpotie stated he was driving one of the marked units tasked with following the undercover unit to arrest the prostitution suspect at an agreed McDonald's location. As an officer in a marked unit, Officer Kpotie had to use his "own judgment to decide how close [he] wanted to stay to the undercover unit who had a suspect in his vehicle." He "had the discretion to violate traffic laws if necessary to stay closer to the undercover vehicle" and if he believed the undercover officer's safety was in jeopardy. Officer Kpotie also stated that marked units were supposed to avoid using emergency equipment during the operation unless exigent circumstances arose. He "determined that there did not seem to be exigent circumstances that would have justified activating that equipment."

14

Officer Kpotie stated that the undercover unit was four vehicles ahead of his unit and made a left turn at an intersection onto Bissonnet Street. He explained that because he was unable to make the light to follow the undercover officer through the intersection, he "exercised [his] individual discretion to wait at the red light." He explained, "As part of this operation, I had the discretion to proceed into this intersection against the light if I had activated my emergency equipment. But I decided not to do that because it is a very busy intersection." He also explained that once the light turned green, he turned left and continued on Bissonnet Street trying to reach the "McDonald's as safely as possible."

He stated the "roads were dry, weather was clear and traffic was medium. I was traveling approximately 40-45 miles per hour.[3] I did not observe my speed to be dramatically different from the other motorists around me; there were other vehicles traveling near me that were going about the same speed as I was. Based upon these facts, I believed my speed to be generally safe and appropriate for the situation and the safety of other motorist[s] and others in the area." Officer Kpotie also stated:

> I continued to follow the direction of travel being called out by the surveilling officer, when I heard my partner tell me to watch out. I was not distracted by my phone, the police radio, our unit's MDT or any other device, I just didn't see the pedestrian until my partner alerted me he was running across Bissonnet. I saw a pedestrian wearing all black who was running from my right to my left across my lane of traffic

---

[3] The speed limit was 35 m.p.h. in the area the accident occurred. In his report, Investigator Romo of the vehicular crimes reconstruction unit stated that, based on the evidence, Officer Kpotie's "vehicle was traveling 55 mph approximately 70 feet from the area of impact." Investigator Romo reconstructed the accident at a speed of 35 m.p.h. and concluded that Officer Kpotie would have hit Sanders even at the posted speed limit. Investigator Romo opined: "Based on this information it is my conclusion that no action could be taken by the driver of the vehicle that would have resulted in the crash not taking place. I have concluded that the factor which lead to this crash was the pedestrian leaving a position of safety, not in a designated crossing area, when it was unsafe and failed to yield right away to a moving vehicle."

outside of a crosswalk. He was within a couple of feet of my patrol vehicle in the 10,000 block of Bissonnet Street. I reacted by steering to the left but the pedestrian impacted the right front of the patrol vehicle and up onto the windshield before landing on the pavement. Due to the poor lighting in this area and the pedestrian wearing all black, I did not notice him before he was in the roadway and my partner alerted me.

\*     \*     \*

It is my opinion that my actions in traveling towards the McDonalds without activating emergency equipment in support of this operation were both reasonable and proper under the circumstances. I considered both the need to assist the operation as a marked unit who could not only make the arrest and protect the safety of the undercover unit, as well as risk of harm to other drivers from my driving as part of this operation. I believe that a reasonably prudent law enforcement officer under the same or similar circumstances could have believed that my actions were justified based on my perception of the facts at the time and that the need to immediately reach the McDonalds to make the prostitution arrest outweighed any minimal risk of harm to others from my own driving.

Officer Kpotie's and Officer Young's affidavits are sufficient to demonstrate that a reasonably prudent police officer in Officer Kpotie's shoes could have believed that his conduct at the time of the accident was warranted and justified. Appellees contend that Officer Kpotie was unnecessarily speeding without lights or sirens after dark "instead of utilizing an alternative and safer method."

But both officers explained in their respective affidavits that (1) Officer Kpotie was driving "as safely as possible, by looking around, observing traffic conditions and motorists"; (2) Officer Kpotie was not distracted by his phone, the police radio, or any other device; (3) the roads were dry, the weather was clear, and the "traffic was medium"; (4) other motorists around him "were going about the same speed as [he] was"; and (5) Officers Kpotie and Young "were stuck in the middle of a bunch of cars that were going roughly the same speed, which prohibited [them] from catching up with the suspect vehicle," causing the officers to believe

16

that "Officer Kpotie's speed [was] generally safe and appropriate for the situation and the safety of other motorist[s] and others in the area."

The officers also discussed why it was reasonable for Kpotie to not activate his marked unit's lights and siren, namely (1) to not "tip off other suspects" and "blow the cover of other undercover units"; (2) there is a risk of causing an accident every time emergency equipment is activated; (3) the traffic was unusually busy that evening; (4) there were no exigent circumstances that would have justified the activation of emergency equipment; and (5) for the protection of the undercover officer while attempting to reach the location to arrest the suspect.

Based on the officers' affidavits, we conclude the City met its summary-judgment burden to make a prima facie showing of Officer Kpotie's good faith.

### 3. *Controverting Evidence*

Because we determined that the City met its initial burden to prove Officer Kpotie's good faith, the burden then shifted to Appellees to present controverting evidence. *See Riojas*, 640 S.W.3d at 541. Thus, Appellees were required to offer evidence that no reasonable police officer in Officer Kpotie's position could have believed that the facts were such that they justified his actions. *See id*. at 542; *Bonilla*, 481 S.W.3d at 643. Appellees did not present any controverting evidence. Therefore, the City conclusively proved that Officer Kpotie acted in good faith.

Based on the evidence presented, we conclude the City established as a matter of law that Officer Kpotie would be entitled to official immunity for his conduct at the time of the accident. Because section 101.021(1) of the TTCA waives immunity only if the governmental employee would be personally liable under Texas law, the City retained its governmental immunity from suit and has established that it is entitled to summary judgment.

17

Accordingly, we sustain the City's issue.

## CONCLUSION

Having sustained the City's issue, we reverse the trial court's order denying the City's motion for summary judgment and render judgment dismissing Appellees' claims against the City for want of subject matter jurisdiction.

/s/ Meagan Hassan
Justice

Panel consists of Justices Wise, Spain, and Hassan.

18