# Supreme Court of Texas

No. 23-0094

City of Houston,

*Petitioner*,

v.

Ruben Rodriguez and Frederick Okon,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**Argued September 10, 2024**

JUSTICE DEVINE delivered the opinion of the Court.

JUSTICE BUSBY filed a concurring opinion, in which Justice Lehrmann and Justice Devine joined.

When police officers act in good faith while performing discretionary duties within the scope of their authority, the common law shields them from personal liability and, in turn, the relevant statutory waiver of their governmental employer's immunity from civil suit does

not apply.[1]  At issue in this interlocutory appeal is whether an officer was acting in good faith when, while turning in pursuit of a suspected felon fleeing in a stolen vehicle, the patrol car hit the street curb and struck a pickup truck waiting at a stop sign.  Relying solely on the officer's statement that he "hit the curb due to the brakes not working," the court of appeals held that a fact issue precluded summary judgment for the city because the officer's testimony was silent about when he became aware that the brakes were not functioning and the risks of driving with defective brakes.[2]

We disagree and conclude that, as a matter of law, the officer was acting in good faith when he executed the turn and collided with the bystander's truck.  Although we indulge every reasonable inference from the summary-judgment evidence in the nonmovant's favor, the officer's statement does not reasonably support an inference that he had prior awareness of any defective brakes; indeed, he clarified that he meant only that his brakes did not stop him, not that they were defective.  The court of appeals' sua sponte supposition to the contrary was inaccurate speculation that conflicted with the parties' positions.  We reverse and render judgment dismissing the case.

## I

Early on a Saturday evening, Houston Police Department Officers Richard Corral and C. Goodman were assisting the Vice Division in running a sting operation with an undercover female detective posing as

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 101.021(1), .025; *City of Houston v. Sauls*, 690 S.W.3d 60, 65-66 (Tex. 2024).

[2] 658 S.W.3d 633, 641-42 (Tex. App.—Houston [14th Dist.] 2022).

a sex worker. After an individual solicited the detective from his vehicle and paid $40 to engage in sexual activity at a nearby parking lot, Corral and Goodman drove to the lot to make an arrest. But when the suspect saw them, he fled in his red Mercedes "at a high rate of speed." The officers pursued the suspect, activating their emergency lights and siren. While Corral focused on driving, Goodman called in the pursuit and the Mercedes's license-plate number. Approximately three minutes into the chase, dispatch relayed that the Mercedes had been reported stolen.

The pursuit lasted less than ten minutes with the suspect driving "erratically"; "at a high rate of speed, weaving in-and-out of traffic"; and "in an exceedingly dangerous manner," including "driving the wrong direction" down a service road at one point. Corral tried to stay close enough to keep eyes on the unidentified suspect while maintaining enough distance to avoid a collision. As the suspect traveled north on a one-way, three-lane service road, Corral followed around fifty feet behind in the middle lane. Suddenly, the suspect turned right onto a side street, "barely missing" Ruben Rodriguez and Frederick Okon, who were in a pickup truck waiting at the stop sign to turn north onto the service road. As Corral followed in pursuit, he noticed the truck and attempted to avoid it but "hit the curb due to the brakes not working," "lost control of the vehicle," and "struck the bed of the truck." At the time of the crash, Corral was traveling thirty-five to forty miles per hour. The investigating officer found that Corral caused the accident by making an improper wide turn from the middle lane. The police never apprehended the suspect but subsequently recovered the stolen vehicle.

3

Rodriguez and Okon sued the City of Houston, alleging that Corral's negligent driving caused them personal injuries for which the Tort Claims Act waives governmental immunity from suit.[3] In response, the City asserted its immunity in a traditional motion for summary judgment supported with affidavits from Corral and his supervisor, Sergeant Kenny Li, Jr. The motion raised two grounds: (1) the Tort Claims Act waives immunity only when the employee would be personally liable, and official immunity shields Corral from liability because he was acting in good faith; and (2) the Act's emergency exception to the waiver applies because Corral was not acting recklessly in responding to an emergency.[4] In response, the plaintiffs attempted to raise a fact issue that Corral recklessly made an improper wide turn by attaching deposition excerpts from Corral and the investigating officer, the police department's crash and offense reports, and related accident documents and photos. The trial court denied the motion, and the City appealed.[5]

A divided court of appeals affirmed.[6] The court held that fact questions prevented summary judgment—specifically, whether and when Corral knew that his brakes were not functioning properly.[7] The

---

[3] *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021(1), .025.

[4] *See id.* §§ 101.021(1)(B), .055(2).

[5] An interlocutory appeal may be taken from an order denying a governmental unit's motion for summary judgment that asserts governmental immunity. *Id.* § 51.014(a)(8); *Sauls*, 690 S.W.3d at 68 n.12.

[6] 658 S.W.3d at 636.

[7] *Id.* at 641-43.

4

court found evidence creating a fact issue in Corral's statement that he "hit the curb due to the brakes not working" and his corresponding failure to discuss any prior awareness of the brakes' condition.[8] According to the majority, if Corral had been driving with knowledge that his brakes were deficient, his course of action would have been reckless and not in good faith.[9] The dissent accused the majority of "*imagin*[*ing*] the existence of a fact" based on this "single statement" and resting its opinion "not on reasonable inferences but on rank speculation."[10] In the dissent's view, the record provides no suggestion of any prior awareness that the brakes malfunctioned.[11] Rather, given Corral's description of accelerating and slowing the patrol car in pursuit, "[t]he only reasonable inference on that score is the opposite: that the brakes were functional."[12]

The City petitioned for review, which we granted. Because the issue of official immunity is dispositive, we do not reach the City's emergency-exception issue.[13]

---

[8] *Id.*

[9] *Id.* at 642-43.

[10] *Id.* at 644-45 (Jewell, J., dissenting).

[11] *Id.* at 645.

[12] *Id.*

[13] In our contemporaneously issued opinion in *City of Austin v. Powell*, we explore the emergency exception's scope and contours. ___ S.W.3d ___, ___, 2024 WL ___ (Tex. Dec. 31, 2024) [22-0662].

## II

## A

A city performing governmental functions may not be sued unless the Legislature waived the city's governmental immunity.[14] By enacting the Tort Claims Act, the Legislature determined that a city's immunity is waived in a suit for personal injuries proximately caused by an employee's negligence in the course and scope of employment and arising from the operation or use of a motor vehicle *but only if* "the employee would be personally liable" under Texas law.[15] And "[t]o the extent an employee has individual immunity from a tort claim for damages," the Act provides that it is not affected by this waiver.[16]

One type of "individual immunity" that shields government employees from personal liability is the common-law affirmative defense of official immunity.[17] "[P]erhaps most vital in police work," official immunity protects officers "when they are performing (1) discretionary

---

[14] *City of Houston v. Sauls*, 690 S.W.3d 60, 68 (Tex. 2024); *see Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019) (noting that cities, as political subdivisions, "share the state's immunity when performing governmental functions"). The judiciary determines the initial applicability of governmental immunity, but the prerogative to waive existing immunity remains with the Legislature, composed of the people's duly elected representatives. *Rosenberg Dev. Corp.*, 571 S.W.3d at 741.

[15] TEX. CIV. PRAC. & REM. CODE §§ 101.021(1), .025.

[16] *Id.* § 101.026.

[17] *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422-24 (Tex. 2004) (discussing the history of official immunity in Texas law).

duties, (2) in good faith, and (3) within the scope of their authority."[18] The doctrine promotes the public good by encouraging energetic law enforcement and allowing officers to make good-faith, split-second judgments based on their experience and training without fear of liability for every mistake.[19]

Although official immunity is the employee's affirmative defense, not the governmental employer's,[20] the Legislature expressly chose language making the Act's waiver of the employer's immunity from suit contingent on the fact that "the employee would be personally liable."[21] As we have consistently recognized, this means that the governmental employer's immunity is not waived if its employee is protected by official immunity.[22] Thus, in a suit against the governmental employer,

---

[18] *Sauls*, 690 S.W.3d at 69-70; *see Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex. 1992) (Cornyn, J., concurring) ("Nowhere else in public service is official immunity more appropriate or necessary than in police work.").

[19] *Sauls*, 690 S.W.3d at 69; *Telthorster v. Tennell*, 92 S.W.3d 457, 463 (Tex. 2002).

[20] *See Sauls*, 690 S.W.3d at 70 n.30 ("Official immunity protects individuals; governmental immunity protects governmental entities.").

[21] TEX. CIV. PRAC. & REM. CODE § 101.021(1)(B).

[22] *See Sauls*, 690 S.W.3d at 69; *City of San Antonio v. Riojas*, 640 S.W.3d 534, 537 (Tex. 2022); *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 (Tex. 2015); *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex. 1995); *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995); *K.D.F. v. Rex*, 878 S.W.2d 589, 597 (Tex. 1994); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994); *City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex. 1993). As we have noted, "we construe statutory language against the backdrop of common law, assuming the Legislature is familiar with common-law traditions and principles." *Marino v. Lenoir*, 526 S.W.3d 403, 409 (Tex. 2017). The Tort Claims Act was adopted fifteen years after we recognized a "good faith"

governmental immunity and official immunity may be essentially entwined.[23] But unlike governmental immunity, official immunity is an affirmative defense that must be pleaded and proved to shield an employee from personal liability; otherwise, the defense is lost.[24] As a

immunity for public officials. *See* Texas Tort Claims Act, 61st Leg., R.S., ch. 292, §§ 3-4, 1969 Tex. Gen. Laws 874, 875-76 (requiring for the waiver of sovereign immunity that "such officer or employee would be personally liable to the claimant in accordance with the law of this state"), *repealed and recodified by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3303 (codified at TEX. CIV. PRAC. & REM. CODE § 101.021); *Ballantyne*, 144 S.W.3d at 422 ("Fifty years ago, we recognized a 'good faith' immunity for certain public officials." (citing *Campbell v. Jones*, 264 S.W.2d 425 (Tex. 1954))).

The original Act had a "tortuous history and a difficult passage." J. Bonner Dorsey, *Whither the Texas Tort Claims Act: What Remains After Official Immunity?*, 33 ST. MARY'S L.J. 235, 242 (2002); *see* Joe R. Greenhill & Thomas V. Murto III, *Governmental Immunity*, 49 TEX. L. REV. 462, 467-68 (1971) (describing the Act's history). Although the legislative history does not inform our decision because the text is clear, we note that the original bill included a provision that individual immunity does not immunize the government, but this limitation was removed by committee amendment. *See* Tex. H.B. 117, 61st Leg., R.S. (1969) (introduced version) ("[T]he individual immunity of public officers . . . is hereby preserved to the extent and degree that such persons presently are immunized; provided, however, that the individual immunity of such persons shall not operate so as to immunize the unit of government[.]"); H. Comm. on Judiciary, Bill Analysis, Tex. H.B. 117, 61st Leg., R.S. (1969) (describing this section as the "[s]ame as [the] original bill except that it removes the limitation that immunity can not immunize the government").

[23] *See DeWitt*, 904 S.W.2d at 653 ("Whether the Texas Tort Claims Act waives sovereign immunity in a given case does not affect whether the governmental employee may assert official immunity as a defense. On the other hand, whether the governmental employee is entitled to official immunity may affect whether the Texas Tort Claims Act's limited waiver of sovereign immunity is applicable." (internal citations omitted)).

[24] *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 128 (Tex. 2015) ("[O]fficial immunity is an affirmative defense that must be pled and proved

8

result, a plaintiff could meet its "burden of affirmatively showing waiver of [*governmental*] immunity" under the Act,[25] including that the employee would be personally liable, without affirmatively negating *official* immunity. For that reason, we conclude that a governmental employer bears the burden to assert and prove its employee's official immunity, in a manner analogous to an affirmative defense, to preclude enforcement of the Act's waiver of governmental immunity on that ground.[26]

The City raised its governmental immunity via a traditional summary-judgment motion, attaching evidence to conclusively establish Corral's official immunity and to affirmatively negate his personal liability under Texas law.[27] In this appeal, only the good-faith element

---

by the party asserting it."); *Clark*, 38 S.W.3d at 580 ("Because official immunity is an affirmative defense, to obtain summary judgment on official immunity, the governmental employee must conclusively prove each element of the defense."); *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) ("As a general rule, an affirmative defense must be pleaded or it is waived.").

[25] *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022); *see City of Austin v. Powell*, ___ S.W.3d ___, ___, 2024 WL ___ (Tex. Dec. 31, 2024) [22-0662, slip op. at 4] (describing as the "foundational rule" that a plaintiff suing the government bears the burden to affirmatively show a waiver of immunity).

[26] By contrast, a plaintiff bears the burden to negate the Tort Claims Act's "various exceptions or caveats that function as a withdrawal of the waiver." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023). For example, a plaintiff would bear the burden to negate the application of the Act's emergency exception. *See, e.g.*, *Powell*, ___ S.W.3d at ___ [22-0662, slip op. at 8] (noting that the Act's emergency exception "withdraws" the waiver of immunity (citing TEX. CIV. PRAC. & REM. CODE § 101.055(2))).

[27] *See* TEX. R. CIV. P. 166a(c); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019) (noting that a jurisdictional challenge to the

9

of the official-immunity defense is at issue.[28]  Our review is de novo, and we view the evidence in the light most favorable to the nonmovants by indulging every reasonable inference and resolving any doubts in their favor.[29]  But we do not disregard necessary contextual evidence or "evidence and inferences unfavorable to the [nonmovants] if reasonable jurors could not."[30]

## B

The foundation of the court of appeals' analysis is the statement in Corral's affidavit that he "hit the curb due to the brakes not working." From this, the court inferred that a fact question exists about Corral's awareness of the brakes' defective nature prior to this event and if the evidence so proved, Corral would not be acting in good faith.[31]  The City

---

waiver of an entity's governmental immunity may be raised via a traditional summary-judgment motion); *cf. Powell*, ___ S.W.3d at ___ [22-0662, slip op. at 6] ("[A] plea [to the jurisdiction] may mirror a traditional motion for summary judgment by attaching evidence in an effort to conclusively negate jurisdiction.").

[28] The City presented evidence establishing that Corral was performing a discretionary duty within the scope of his authority by pursuing the suspect in a high-speed chase while on duty, which the plaintiffs do not contest.  *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 655, 658 (Tex. 1994) (holding that "engaging in a high-speed chase" while "on duty, in a squad car" is generally a discretionary act within the scope of an officer's authority).

[29] *City of Houston v. Sauls*, 690 S.W.3d 60, 70 (Tex. 2024); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018).

[30] *Alamo Heights*, 544 S.W.3d at 771.

[31] 658 S.W.3d 633, 642 (Tex. App.—Houston [14th Dist.] 2022) ("By driving a vehicle with brakes that 'were not working', countervailing public safety concerns rose to a significant level," and "a reasonably prudent police officer would not have believed that the need to which he was responding outweighed the risks of his course of action.").

does not dispute that if this inference were reasonable, summary judgment would be improper. Absent this inference, however, the court's analytical edifice crumbles.

The reasonableness of the inference turns on the reasonably inferable meaning of Corral's statement. Although "not working" may mean defective or not functioning,[32] the term may also signify that something is insufficient or not up to the task to accomplish an intended result.[33] The record establishes that Corral intended the latter meaning: the brakes were functional, but their use did not accomplish his intended result of stopping the car before it hit the curb.

As an initial observation, the plaintiffs neither pleaded nor alleged that the brakes were defective. And in Corral's deposition, the plaintiffs sought to clarify the meaning of his statement that his brakes were not working:

> [Plaintiffs' Counsel]: Okay. Were your brakes working at that point [of making the turn]?
>
> [Corral]: I would say not—I mean, I tried to brake as hard as I could.
>
> [Plaintiffs' Counsel]: Okay. Well, I mean, clearly the brakes didn't stop you, but were they working?
>
> [Corral]: Yes.

---

[32] *See Working*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) ("adequate to permit work to be done"); *Work*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016) ("To function; operate").

[33] *See Work*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) ("to produce a desired effect or result"; "to function or operate according to plan or design"); *Work*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016) ("To have the desired effect or outcome; prove successful").

11

Corral also confirmed this understanding in the Houston Police Department Crash Questionnaire by marking "no" to the question "did faulty equipment cause the crash?"[34]

The plaintiffs attached both pieces of evidence to their summary-judgment response, and they never argued in the lower courts that the brakes were defective—in fact, they never even mentioned the brakes. And in this Court, the plaintiffs expressly acknowledged that "[t]here is no indication that the brakes on Officer Corral's cruiser were not working." The court of appeals nevertheless injected uncertainty into what was undisputed, relying on a sua sponte construction of Corral's statement as meaning that the brakes were defective.[35]

The statement's textual context, which we have repeatedly emphasized is "a primary determinant of meaning,"[36] also reinforces Corral's intended meaning. In his affidavit, Corral made the statement

---

[34] All caps omitted.

[35] Because our adversary system relies on courts to serve as neutral arbiters, not advocates, they must exercise caution to avoid manufacturing factual disputes not identified by the parties. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020). When it is unclear whether matters are truly contested, a court should rely on the tools provided by our rules. For example, the City requested oral argument, where the court of appeals could have inquired into the parties' positions on the condition of the brakes and the meaning of "not working." *See* TEX. R. APP. P. 39.1 (providing a right to oral argument unless the court decides it is unnecessary). But the court denied the request. Although this may have saved the parties from expending additional resources in that court, it ultimately required the litigants and the judiciary to consume resources for an appeal to this Court to address what was factually undisputed.

[36] *See, e.g.*, *Morath v. Lampasas Indep. Sch. Dist.*, 686 S.W.3d 725, 735 n.35 (Tex. 2024) (quoting *Brown v. City of Houston*, 660 S.W.3d 749, 754 (Tex. 2023)).

after describing how he turned, accelerated, and decelerated his patrol car while pursuing the suspect in a high-speed chase without mentioning any operational trouble or defective brakes. We agree with the dissent in the court of appeals that considering the affidavit in its entirety—along with the undisputed summary-judgment evidence—the "only reasonable inference" is "that the brakes were functional."[37]

Finally, even if Corral had intended to communicate that he hit the curb because his brakes were defective, as the court of appeals concluded,[38] that statement alone would not give rise to a reasonable inference that he was *aware* of any defect before that point. Stating that a defect caused an event says nothing about one's prior awareness. Inferring prior awareness is no more plausible than inferring *no* prior awareness—either inference would be a pure guess, which is no evidence to raise a fact question about the officer's prior awareness.[39]

In sum, the court of appeals erroneously inferred an issue of material fact to preclude summary judgment when the parties did not

---

[37] 658 S.W.3d 633, 645 (Tex. App.—Houston [14th Dist.] 2022) (Jewell, J., dissenting).

[38] *Id.* at 641 (noting that "Officer Corral did not provide any further explanation regarding how his brakes' deficient condition contributed to his driving, his decision-making, or the cause of the collision").

[39] *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) ("Evidence that is so slight as to make any inference a guess is in legal effect no evidence."); *cf. McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 395 (Tex. 2019) ("When circumstantial evidence 'is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion[,]' it is in legal effect no evidence." (quoting *Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex. 2015))).

dispute the underlying fact and the evidence did not reasonably give rise to that inference.

## C

We now turn to whether the City met its burden as the traditional summary-judgment movant. We conclude that the City conclusively established Corral's good faith in making a wide turn while pursuing a suspect fleeing in a stolen vehicle and that the plaintiffs failed to raise a fact issue controverting the City's proof.

The standard for an officer's good faith in a high-speed pursuit case is whether "a reasonably prudent officer, under the same or similar circumstances, *could have believed* that the *need* to immediately apprehend the suspect outweighed a clear *risk* of harm to the public in continuing the pursuit."[40] No magic words are required to satisfy this holistic inquiry; rather, the summary-judgment proof must sufficiently assess particularized need–risk factors with reference to specific facts.[41] The focus is "on the objective facts and information the officer knew and perceived, not on whether the officer had subjectively considered and assessed certain factors."[42]

The "need" aspect of this balancing test refers to the urgency of police intervention, which is balanced against the "risk" aspect of the countervailing public-safety concerns.[43] The "need" factors include the

---

[40] *City of Houston v. Sauls*, 690 S.W.3d 60, 72-73 (Tex. 2024) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994)).

[41] *Id.* at 74-75.

[42] *Id.*

[43] *Id.* at 73.

14

seriousness of the crime to which the officer is responding, the necessity of the officer's immediate presence to prevent injury or loss of life or to apprehend a suspect, and the availability of any alternative courses of action to achieve a comparable result.[44] The "risk" factors address the nature, severity, and likelihood of any harm that the officer's actions could cause and whether such risk would be clear to a reasonably prudent officer.[45] As we recently reiterated, this standard "does not place an onerous burden on law enforcement" because the touchstone is "what a reasonable officer *could have believed*" under the circumstances.[46]

To establish good faith, the City relied on affidavits from Corral and his supervisor, which provide similar accounts of the relevant events.[47] In their affidavits, the officers opined that a reasonable officer, under the same or similar circumstances, could have believed that the need to pursue the suspect, who was recklessly fleeing in a stolen vehicle, outweighed the risks of making a wide turn in pursuit. And the

---

[44] *Id.* (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997)).

[45] *Id.* (quoting *Wadewitz*, 951 S.W.2d at 467).

[46] *Id.* at 75 (quoting *City of San Antonio v. Riojas*, 640 S.W.3d 534, 539 (Tex. 2022); and *Wadewitz*, 951 S.W.2d at 467 n.1).

[47] Sergeant Li "was one of many supervisors monitoring the chase over the radio" and, as an officer for over a decade, has been involved in "dozens of high-speed chases." He based his opinions on his "knowledge, skill, experience, training, and education as a police officer"; personal conversations with Corral; a review of Corral's affidavit and body-camera footage; and an evaluation of the events and circumstances of the accident.

officers substantiated those conclusions by assessing the need–risk factors based on Corral's perception of the facts at the time of the event.

In addressing the need factors, both officers detailed the events leading up to the accident and discussed the seriousness of the suspect's alleged crimes. Corral explained that by the time he made the turn, he knew the suspect had committed two felonies and a misdemeanor— "theft of a motor vehicle," "evading officers with a motor vehicle," and "solicitation of prostitution"—and was "driving in an exceedingly dangerous manner."[48] Given the purported offenses and the danger from the suspect's reckless driving, the officers opined that Corral's immediate presence was required to apprehend the suspect. They also implicitly discounted other alternatives by noting that Corral "lacked sufficient information to discontinue the pursuit and arrest the [unidentified] suspect at another time" and "would not be able to track down the suspect through [the stolen] vehicle['s] records."[49]

---

[48] *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 531-32 (Tex. 2022) ("[W]e have long recognized that fleeing suspects may pose an even greater danger to the community."); *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 645 (Tex. 2015) ("DPS's summary-judgment evidence detailed the specific circumstances giving rise to pursuit and emphasized the potential danger to the public due to the subject vehicle's erratic and unsafe activity.").

[49] *See Sauls*, 690 S.W.3d at 75 (reaffirming that alternative courses of action may be implicitly discounted instead of explicitly addressed); *Bonilla*, 481 S.W.3d at 645 ("Although not explicitly addressing alternatives to pursuit, the trooper implicitly discounted the viability of other alternatives based on his stated belief that immediate action was necessary and his inability to identify the driver at that time."). The plaintiffs point out that Corral acknowledged in his deposition that he "could have gone straight to avoid any kind of collision and just given a description where the subject was heading to." But consistent with his affidavit, Corral explained that he nevertheless "was just trying to catch up to the suspect and keep eyes on him."

Regarding the risk aspect of the standard, we have explained that it is not necessary to expressly identify risks that are generally present; they "can be addressed through describing the facts and circumstances that affected the risks."[50] Here, the officers described the conditions that minimized the risks: although it "was already dark outside," the "weather was clear and roads were dry" with light to medium Saturday traffic.[51] The officers also noted Corral's efforts to mitigate the risks: he activated the patrol car's lights and siren for the entire pursuit, he "repeatedly" used his air horn so that cars would yield to his vehicle, he focused on driving safely while his partner communicated on the radio, and he tried to "keep enough distance to avoid a collision" without allowing the suspect to evade capture.[52]

No doubt, there are obvious and significant risks associated with pursuing a suspect who is recklessly driving at a "high rate of speed" and then makes a "sudden" turn.[53] The plaintiffs focus on the risks

---

[50] *Sauls*, 690 S.W.3d at 75.

[51] *See Univ. of Hous. v. Clark*, 38 S.W.3d 578, 586 (Tex. 2000) (noting that the summary-judgment evidence addressed the specific circumstances present that affected the general risk of colliding with another vehicle by "assessing such facts as the time of day and traffic, weather and road conditions").

[52] Although the test does not inquire into an officer's subjective good faith, Corral's efforts are part of the objective circumstances that mitigated risks. *See Sauls*, 690 S.W.3d at 73 ("This good-faith test, perhaps inaptly named given the subjective connotations, is 'one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith.'" (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994))).

[53] *Maspero*, 640 S.W.3d at 531 ("[A]ll high-speed car chases involve obvious risk of serious injury to bystanders."); *Telthorster v. Tennell*, 92 S.W.3d

arising from Corral's improper wide turn from the middle lane of the service road while speeding.[54] By no means should these risks be minimized, and public safety should not be "thrown to the winds in the heat of the chase."[55] And because of the "inherent risks that high-speed driving poses to those utilizing public streets and highways," we crafted the particularized need–risk factors "in an attempt to tailor a test that would better weigh th[ose] risks."[56]

As we must acknowledge, however, speeding and making turns in a manner that would be improper and unreasonable in everyday driving are "*ordinarily* 'part and parcel of a police chase.'"[57] While it should go without saying, it bears emphasizing that what may be unreasonable in one context could be justifiable in another, especially in the heat of a high-speed pursuit when officers must make split-second decisions

---

457, 463 n.1 (Tex. 2002) (identifying concerns about the risks to the general public and bystanders that high-speed pursuits present).

[54] The side street had a posted thirty-five miles-per-hour speed limit, but the record does not indicate the service road's speed limit. The plaintiffs assert that "surely [Corral] was going much faster" than thirty-five to forty miles per hour on the service road because that was the speed at the time of the crash after Corral had hit the brakes and gone over the curb. And Corral acknowledged in his deposition that he did not remember how fast he was going on the service road as he approached the turn.

[55] *Clark*, 38 S.W.3d at 584 (quoting *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992) (plurality opinion)).

[56] *Telthorster*, 92 S.W.3d at 463-64.

[57] *City of Austin v. Powell*, ___ S.W.3d ___, ___ (Tex. Dec. 31, 2024) [22-0662, slip op. at 28] (quoting *Maspero*, 640 S.W.3d at 532).

under intense pressure.[58]  On this record, we conclude that the City substantiated its officers' opinions that a reasonably prudent officer under the circumstances of the heat of this chase *could have believed* that the need to turn while speeding to maintain pursuit of an unidentified fleeing suspect outweighed the risks.  To slow down and not make the turn would equate to discontinuing the pursuit, which Corral implicitly discounted given the stated need for police intervention and his inability to apprehend the suspect at another time.  This evidence is sufficient to satisfy the City's summary-judgment burden to establish its officer's good faith under the requisite holistic inquiry.  The burden then shifted to the plaintiffs to present evidence raising a fact issue as to that matter.

When the burden shifts on good faith, a plaintiff may defeat summary judgment only by satisfying an "elevated standard of proof."[59] It is not enough to show that reasonable officers *could* disagree on the issue; a plaintiff "must show, with 'reference to each aspect of the need and risk balancing test,' that *no* reasonably prudent officer 'in the defendant's position could have thought the facts were such that they justified defendant's acts.'"[60]  In previous cases, we have considered

---

[58] *See City of Houston v. Sauls*, 690 S.W.3d 60, 79 (Tex. 2024) ("Good faith does not require that the officer made the best decision or eliminated all risk, especially when the officer has acted in the heat of an emergency response[.]"); *Clark*, 38 S.W.3d at 583 ("Police officers must make their decisions about pursuing a suspect rapidly and while under pressure.").

[59] *Sauls*, 690 S.W.3d at 75 (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994)).

[60] *Id.* at 75-76 (footnote omitted) (quoting *Clark*, 38 S.W.3d at 587; and *Chambers*, 883 S.W.2d at 657).

whether expert testimony was more than conclusory to satisfy this burden and defeat summary judgment.[61] But the plaintiffs here did not present any expert testimony. Instead, they relied on deposition transcripts and documentary evidence showing that Corral significantly damaged the truck's bed, made an improper wide turn, exceeded the speed limit, and could have gone straight instead of turning while providing dispatch with a description of the direction the subject was heading.

At most, this evidence raises a question about Corral's negligence or is some evidence that a reasonably prudent officer could have made a different decision.[62] But it does not satisfy the elevated standard of showing that *no* reasonably prudent officer could have believed that Corral was justified in making the turn to pursue a felony suspect who was actively endangering the public. We therefore hold that the plaintiffs failed to controvert the City's proof.

---

[61] *Id.* at 79 (holding that the expert's "opinion is 'a one sided analysis' insufficient to satisfy the [plaintiffs'] elevated burden and defeat summary judgment" (quoting *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007))); *Clark*, 38 S.W.3d at 587 (concluding that because the expert "testimony on good faith is not substantiated with reference to each aspect of the need and risk balancing test, it is conclusory and is insufficient to controvert the defendant's proof on good faith"); *see Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997) ("[A]n expert witness's conclusory statement that a reasonable officer could or could not have taken some action will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment.").

[62] *See Sauls*, 690 S.W.3d at 80 (observing that "evidence of negligence alone" or "that a reasonably prudent officer *could* have made a different decision" is "not enough to controvert proof of good faith").

## III

As a matter of policy, the Legislature has determined that when a vehicular accident occurs during a high-speed chase while an officer is acting in good faith and protected by official immunity, the victim—rather than the city and its taxpayers—must bear the cost of his or her personal injuries.[63]  Here, the City conclusively established that its officer made a wide turn during a high-speed chase in good faith, and the plaintiffs failed to controvert the City's proof.  Because the officer would be protected from personal liability by official immunity, the City's governmental immunity was not waived under the Tort Claims Act.  Accordingly, we reverse the court of appeals' judgment and render judgment dismissing the case.

John P. Devine
Justice

**OPINION DELIVERED:** December 31, 2024

---

[63] *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1); *supra* note 22.